The STATE of Ohio, Appellee,

v.

APANOVITCH, Appellant.

[Cite as *State v. Apanovitch* (1996), 113 Ohio App.3d 591.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 70009.

Decided Aug. 19, 1996.

Stephanie Tubbs Jones, Cuyahoga County Prosecuting Attorney, and L. Christopher Frey, Assistant Prosecuting Attorney, for appellee.

Dale A. Baich and John B. Heasley, Assistant State Public Defender, and Mark R. Devan, for appellant.

---

*Per Curiam.*

Petitioner Anthony C. Apanovitch appeals the decision of the court below that dismissed his second successor petition to vacate or set aside judgment and/or sentence pursuant to R.C. 2953.21 and 2953.23(A).

Petitioner was convicted by a jury of aggravated murder with a felony murder specification, aggravated burglary and two counts of rape, under R.C. 2903.01, 2911.11 and 2907.02, on December 14, 1984. The jury recommended that the sentence of death be imposed, and the trial judge sentenced him to death pursuant to the mandate of R.C. 2929.03(D). Petitioner's convictions and sentences have been affirmed on appeal. See *State v. Apanovitch* (Aug. 26, 1986),

Cuyahoga App. No. 49772, unreported, 1986 WL 9503; *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 514 N.E.2d 394.

The petitioner, having exhausted his direct appeals in the state courts, filed his first petition to vacate or set aside judgment and/or sentence pursuant to R.C. 2953.21 and 2953.23(A) in June 1988. The petition was dismissed by the trial court, and that decision was then affirmed by this court of appeals. The Supreme Court declined to accept jurisdiction.

Petitioner next sought a writ of habeas corpus in the United States District Court for the Northern District of Ohio. The district court dismissed the petition in its entirety. The petitioner appealed that decision to the Court of Appeals for the Sixth Circuit. Upon petitioner's motion for stay, the Sixth Circuit stayed the appeal until final disposition of the state proceedings.

Petitioner then filed his first successor petition to vacate or set aside judgment. The first successor petition was dismissed by the trial court. The dismissal was affirmed by this court of appeals on November 9, 1995. The Supreme Court declined jurisdiction in the matter of the first successor petition and dismissed the appeal as not involving any substantial constitutional question on May 23, 1996.

The matter before this court now is the petitioner's appeal of the lower court's dismissal of his second successor petition to vacate or set aside judgment and/or sentence pursuant to R.C. 2953.21 and 2953.23(A), which was filed August 24, 1995.

The four claims in petitioner's second successor petition to vacate are based upon the evidence obtained by the petitioner from the FBI on July 7, 1995 after a Freedom of Information Act request. Petitioner claims that the state deliberately withheld this evidence, which was material, relevant and exculpatory. He claims that such withholding of evidence by the state rendered his counsel ineffective. Further, petitioner contends that the state interfered with his ability to pursue collateral relief in state and federal courts.

This second successor petition was dismissed by the trial court on November 27, 1995. In its findings of fact and conclusions of law, the lower court found that the withheld evidence was "not exculpatory" and dismissed claims one, two and three. The lower court further found that the petitioner's fourth claim failed to state a claim for which relief could be granted.

Petitioner timely filed his appeal of the dismissal of his second successor petition and presents two assignments of error for our review. For the reasons stated below, we affirm the decision of the trial court.

I

"The failure to grant postconviction relief violated appellant's rights under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 9, 10, 16 and 20 of the Ohio Constitution."

The claims of petitioner in his second successor petition are based upon documents produced by the FBI in July 1995, which demonstrate that his fingerprints were not found on various pieces of evidence found at the crime scene. The petitioner contends that these documents were relevant, material, exculpatory and necessary to his defense at trial. Petitioner claims that the nondisclosure of this evidence by the state violated his rights pursuant to directive of the Supreme Court in *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.

The court in *Brady* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196–1197, 10 L.Ed.2d at 218. In *United States v. Agurs* (1976), 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342, the court determined three situations in which a *Brady* claim might arise. First, the claim might arise where previously undisclosed evidence revealed that the prosecution introduced trial testimony that it knew or should have known was perjured. *Id.* at 103–104, 96 S.Ct. at 2397–2398, 49 L.Ed.2d at 349–350. Second, the claim might arise where the government failed to accede to a defense request for disclosure of some specific kind of exculpatory evidence. *Id.* at 104–107, 96 S.Ct. at 2397–2399, 49 L.Ed.2d at 350–352. Third, the claim might arise where the government failed to volunteer exculpatory evidence which was never requested, or requested only in a general way. The court in *Agurs* found a duty on the part of the government in this situation when the suppression of the evidence would be "of significance to result in the denial of the defendant's right to a fair trial." *Id.* at 108, 96 S.Ct. at 2400, 49 L.Ed.2d at 352.

The court in *United States v. Bagley* (1985), 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494, stated that "evidence is 'material' only if there is, a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. 'A reasonable probability' is a probability sufficient to undermine confidence in the outcome."

The court in *Kyles v. Whitley* (1995), 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490, outlined the four aspects of materiality under *Bagley, supra,* stating:

"Although the constitutional duty is triggered by the potential impact of favorable but undisclosed evidence, a showing of materiality does not require

demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant)." *Id.* at 434, 115 S.Ct. at 1565–1566, 131 L.Ed.2d at 506.

The *Kyles* court further stated:

"*Bagley's* touchstone of materiality is a 'reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the Government's evidentiary suppression 'undermines confidence in the outcome of the trial.' *Bagley,* 473 U.S. at 678 [105 S.Ct. at 3381, 87 L.Ed.2d at 491].

"The second aspect of *Bagley* materiality bearing emphasis here is that it is not a sufficiency of evidence test. A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict. * * * One does not show a *Brady* violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

"Third, we note that * * * once a reviewing court applying *Bagley* has found constitutional error there is no need for further harmless error review. * * *

"The fourth and final aspect of *Bagley* materiality to be stressed here is its definition in terms of the suppressed evidence considered collectively, not item-by-item." (Footnotes omitted.) *Kyles, supra,* 514 U.S. at 434–436, 115 S.Ct. at 1566–1567, 131 L.Ed.2d at 506–507; see *State v. Apanovitch* (Nov. 9, 1995), Cuyahoga App. No. 68742, unreported, at 13.

With these standards in mind, we must determine whether the evidence recently made available to the petitioner is so compelling that it suggests that the state's failure to disclose it prior to trial constitutes a violation of the state's duty under *Brady* and that the cumulative effect of this newly discovered evidence is such as to "put the whole case in such a different light as to undermine confidence in the verdict." *Kyles, supra,* 514 U.S. at 435, 115 S.Ct. at 1566, 131 L.Ed.2d at 506.

The documents at issue in the petitioner's second successor petition are documents which petitioner obtained from the FBI which were allegedly withheld despite his discovery request prior to trial. These documents consist of various

Cleveland Police Department reports and correspondence with and from the FBI, including a two-page letter to the FBI from Detective Bornfeld dated September 7, 1984 requesting the FBI to examine the enclosed materials for latent prints and comparison of those of the suspects and a three-page report by the Latent Fingerprint Section Identification Division of the FBI dated September 25, 1984, which indicated that, as a result of the examination, "no latent prints of value were developed." These documents indicate that the state of Ohio was in possession of information which demonstrated that the petitioner's fingerprints were not found on various pieces of evidence obtained from the crime scene. Petitioner argues that these documents show that although the state offered testimony at trial that none of the latent fingerprints obtained from the crime scene belonged to the petitioner, the state withheld information that indicated additional fingerprint testing was performed that exculpated the petitioner.

Petitioner admits that at the time of trial, the state disclosed the lack of physical evidence linking him to the scene of the crime. He further admits that, at trial, the state offered testimony that none of the latent fingerprints obtained at the crime scene belonged to him.

It is the contention of the petitioner that the state's failure to produce these additional test results indicating that no latent fingerprints belonged to him denied him a fair trial. We find this argument to be specious. The report of the FBI which states that "no latent prints of value were found" is not a document which can be said to be material, relevant and exculpatory to the petitioner's defense at trial where the state, at trial, had already apprised the jury that no fingerprints of petitioner were found at the crime scene and where he knew that the state had no fingerprints or direct evidence to link him to the crime scene.

We do not see how the withheld evidence would have put the whole case in such a different light as to undermine confidence in the verdict as required by *Kyles, supra.* Unlike the evidence in *Kyles,* the withheld evidence here would make neither the state's case much stronger nor the defense case much weaker. *Id.,* 514 U.S. at 429, 115 S.Ct. at 1563, 131 L.Ed.2d at 502–503. Petitioner has failed to meet the burden under *Kyles.* Under the circumstances, petitioner was not deprived of effective representation, and the alleged exculpatory evidence is not sufficient to undermine confidence in his conviction and warrant postconviction relief.

Accordingly, the petitioner's first assignment of error is not well taken and is overruled.

## II

"Apanovitch had a right to an evidentiary hearing on the allegations raised in the second successor petition for post-conviction relief. Failure to hold a hearing

and dismissing the second successor petition violated the guarantees of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 9, 10, 16 and 20 of the Ohio Constitution."

■ Petitioner presented four claims in his second successor petition. He alleged constitutional violations in each claim. He attached eleven exhibits of evidence outside the record so that the claims were not subject to the doctrine of *res judicata.* He further contends that the evidence attached to his second successor petition supported the allegations claimed and is, therefore, not so specious as not to warrant a hearing. The petitioner contends that the lower court's failure to hold a hearing on his petition for postconviction relief was error.

The second successor petition was filed pursuant to R.C. 2953.21, which states:

"The court shall consider a petition that is timely filed under division (A)(2) of this section even if a direct appeal of the judgment is pending. *Before granting a hearing, the court shall determine whether there are substantive grounds for relief.* In making such a determination, the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. \* \* \*" (Emphasis added.)

■ A criminal defendant seeking to challenge his conviction through a petition for postconviction relief is not automatically entitled to such a hearing. *State v. Jackson* (1980), 64 Ohio St.2d 107, 18 O.O.3d 348, 413 N.E.2d 819. In *Jackson,* the court held that before a hearing is granted, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the claimed error. *Id.* at 111, 18 O.O.3d at 350–351, 413 N.E.2d at 822–823.

■ It is well established that postconviction relief petitions are subject to dismissal without a hearing if the petition and the supporting evidentiary documents do not contain sufficient operative facts which, if true, would establish substantive grounds for relief. *State v. Sowell* (1991), 73 Ohio App.3d 672, 682, 598 N.E.2d 136, 142–143. The trial court below determined, upon review of the petitioner's allegations and record in this case, that there were no substantive grounds for relief in his petition. The evidentiary documents did not contain sufficient operative facts to demonstrate the claimed error. We have affirmed that determination of the lower court in our review of the petitioner's first assignment of error and found the evidence attached to the petition to be specious. Where the evidence presented is specious, a hearing is not required. See *State v. Cole* (1982), 2 Ohio St.3d 112, 2 OBR 661, 443 N.E.2d 169. Petitioner failed to present evidence of a weight and quality to demonstrate substantive

grounds for relief to warrant an evidentiary hearing; thus, the trial court's failure to conduct a hearing is not error pursuant to the statutory requirements of R.C. 2953.21(C).

Therefore, we find that the petitioner's second assignment of error is not well taken and is overruled.

The decision of the lower court is affirmed.

*Judgment affirmed.*

HARPER, P.J., MATIA and TIMOTHY E. McMONAGLE, JJ., concur.