[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
The following is an appeal from a judgment of the Lake County Court of Common Pleas denying, without a hearing, the postconviction relief petition of appellant, Raymond Gau. For the reasons that follow, we affirm the judgment of the trial court in part, reverse in part and remand for further proceedings consistent with this opinion.
On November 29, 1988, appellant was indicted by the Lake County Grand Jury on one count of rape, in violation of R.C.2907.02, and one count of kidnapping, in violation of R.C.2905.01. On December 12, 1988, appellant was arraigned and entered a plea of not guilty on all charges. A jury trial commenced on November 13, 1989.
The following evidence was presented at appellant's trial. On February 26, 1988, the alleged victim, Krista Parisi, and two of her friends, Dana DeBernardi and Colleen Vidmar, went to the Cosmopolitan, a nightclub located in Willoughby, Ohio. After spending a few hours there, the women left the Cosmopolitan and went to the Honky Tonk Saloon in Grand River, Ohio so that Colleen could meet with her mother, Kathleen Vidmar. At the Honky Tonk Saloon, the victim saw her sister's former fiancee, William W. Hood, who introduced her to appellant.
At approximately 1:00 the morning of February 27, 1988, the victim wanted to leave the bar and go home. Unable to convince her friends to leave at that time, Ms. Parisi accepted a ride from appellant. Ms. Parisi testified that she left the Honky Tonk Saloon, without incident, with appellant and two of his friends. Appellant drove to the Argonne Arms Apartments in Painesville, Ohio where he dropped off his friends. While still in the parking lot of the Argonne Arms Apartments, a heavyset boy approached the passenger side of the automobile. The victim attempted to leave appellant's vehicle, but the heavyset boy reportedly hit her on the head with a beer bottle and pushed her back into the car. The heavyset boy then climbed into the driver's seat and appellant sat in the passenger's seat with Ms. Parisi between the two of them.
Ms. Parisi testified that the three of them drove to a church parking lot near her home. Appellant then pulled her out of the car and she attempted to run away. She fell down when her shoe became stuck in some mud. Once on the ground, the heavyset boy held Ms. Parisi's hands while appellant had forcible sexual intercourse with her. Before leaving Ms. Parisi in the church parking lot, appellant allegedly threatened to harm her little brother if she told anybody what happened.
Ms. Parisi ran home. Upon arriving home, she put her clothes in the washing machine, took a shower, and went to bed. At first, she told no one about the incident out of fear that appellant would harm her family. The incident was reported to the police approximately three weeks after it occurred.
In addition to the victim's testimony, Ms. Parisi's friends testified at trial as to their activities the night of the incident and their attempts to check on her whereabouts after she left the Honky Tonk Saloon with appellant. Her family described the extensive bruises the victim sustained on her face and legs as a result of this alleged incident. The victim's family members and an officer from the Grand River Police Department also testified to the events leading to Ms. Parisi's report of the incident.
On cross examination of the state's witnesses, appellant established several inconsistencies in the prosecution's case such as different statements made by Ms. Parisi to the police as to how she came to receive a ride home from appellant[1] and confusion in the testimony given by her friends as to their whereabouts after they left the Honky Tonk Saloon and began to look for Ms. Parisi. Appellant, who took the stand in his own defense, denied that he molested or harmed Ms. Parisi in any way. According to appellant, he drove Ms. Parisi straight home and then returned to his own home where he went to bed.
Following the conclusion of the evidence presented at trial, on November 17, 1989, appellant was found guilty on both counts. On December 11, 1989, appellant was sentenced to serve an indefinite term of incarceration of ten to twenty-five years on the charge of rape, and an indefinite term of incarceration of five to twenty-five years on the charge of kidnapping, to be served consecutively. Appellant's conviction was subsequently affirmed by this court in State v. Gau (Mar. 29, 1991), Lake App. No. 89-L-14-172, unreported. Appellant sought leave to appeal his conviction in the Supreme Court of Ohio. The court overruled and dismissed appellant's motion on October 7, 1991, because no substantial constitutional question existed. State v. Gau (1991),62 Ohio St.3d 1405.
On August 8, 1996, appellant filed an extensive petition for postconviction relief pursuant to R.C. 2953.21. The impetus for appellant's petition was a purported affidavit that appellant received from the victim's former boyfriend, Carl Heath, who provided information concerning the victim's alleged rape. In addition to the opinion from a former boyfriend that Ms. Parisi was a "nympho" who could not have been raped, Mr. Heath also apparently informed appellant that Ms. Parisi was involved in a serious car accident three weeks before the purported rape by appellant. The extent of her injuries from this accident were so severe, Mr. Heath averred, that Ms. Parisi was hospitalized for a two week period, and, when he saw her sometime on the nineteenth or twentieth of February 1988, her face was "badly bruised and swollen."
On the basis of Mr. Heath's affidavit, appellant and his family began to investigate his allegations. Attached to his petition for postconviction relief, in addition to Mr. Heath's affidavit, appellant submitted copies of an accident report dated February 1, 1988, involving Ms. Parisi. A witness to the accident reported that Ms. Parisi was thrown forward in her vehicle after a three-car pileup, was slumping against the driver's side door, and appeared to have hit her head. The accident report stated that Ms. Parisi was unconscious and transported to Lake West Hospital. She was subsequently cited for assured clear distance and no seat belt. Appellant submitted clippings from a local newspaper reporting that Ms. Parisi was admitted into the hospital on February 1, 1988, and discharged on February 13, 1988.
In addition to presenting evidence of the injuries Ms. Parisi sustained as a result of a car accident on February 1, 1988, appellant submitted other materials with his petition. Appellant asserts that the sum of the information he presented in his petition, and summarized below, warrants a hearing on the actions of his trial counsel, the trial court judge, the police, and the prosecutors that handled his case.
As to his claims against his trial counsel and the trial court judge, appellant submitted a letter from his attorney, dated November 6, 1995, wherein she acknowledged that both she and her co-counsel had been appointed as special Lake County Prosecutors sometime between 1988 and 1989. Appellant alleged that the record clearly establishes that the trial court was aware of a potential conflict of interest and attached four hearing notices that were sent to "Lake County Prosecutor, [appellant's trial attorney.]" Appellant argued that because the trial court was aware of a potential conflict, the court should have conducted a hearing to establish if a conflict existed. In addition, appellant claims that he never would have consented to be represented by an attorney who was "moonlighting" as a special prosecutor. Moreover, appellant claims that his trial counsel failed to adequately protect his interests and failed to discover evidence that he has since found in his defense.
As to the actions of the police and prosecutors, appellant alleges that the state withheld exculpatory materials within their possession. First, appellant claims that the state withheld prior statements made by Kathleen Vidmar, a witness for the state, and Colleen Vidmar, called by the defense as a witness. Appellant claims that the statements withheld from these two witnesses contained valuable impeachment evidence involving inconsistencies in the victim's report of details of the rape, when Ms. Parisi told others about the rape, and whom she told about the rape.
Second, appellant alleges that the prosecution withheld the exculpatory statement of the former fiancee of the victim's sister, William W. Hood. In a statement made to police, Mr. Hood stated that he saw Ms. Parisi the morning after the incident and that she stated that she had been raped by appellant. However, Mr. Hood stated the only bruise he saw was on the victim's leg.
Third, appellant claims that the prosecutors and police withheld three supplementary offense reports made by officers of the Grand River Police Department which contained inconsistencies in the victim's account of the attack. Appellant submitted evidence that his attorney requested these supplemental police reports from the Lake County Sheriff's Department and asserts that his trial counsel was denied access to them.
Finally, appellant accuses the prosecutor's office of having within its possession evidence of Ms. Parisi's car accident of February 1, 1988. Appellant further alleges that the prosecution frustrated his attempts to call a witness at trial, Dr. Ruiz, who examined Ms. Parisi and could have testified to the extent of her bruises from the car accident.
By judgment entry filed September 26, 1996, the trial court summarily denied appellant's petition for postconviction relief. The trial court subsequently vacated this judgment entry and the state filed a response in opposition to appellant's petition on October 3, 1996. In its response, the state argued that appellant's petition was barred under the doctrine of res judicata
because many of the claims he raised in his petition were formerly raised, or should have been raised, in his direct appeal. However, assuming that the trial court did not dismiss appellant's petition, the state responded to appellant's accusations.
As to appellant's claims that the trial court failed to inquire about a conflict of interest that existed with his trial counsel, the state asserted that no such conflict existed. Appellee asserted that the four hearing notices submitted by appellant as proof that the court knew of a conflict merely designated that notice was to be sent to both the prosecutor and appellant's trial counsel, not that appellant's trial counsel was the prosecutor. The state presented evidence that the envelope used to mail the notice to appellant's trial counsel was not addressed to the prosecutor's office. The state also submitted an affidavit from appellant's trial counsel denying that any conflict of interest existed. Appellant's trial attorney explained that her only work with the Lake County Prosecutor's Office occurred when she was appointed as an assistant special prosecutor on January 5, 1988, for a case that concluded at the end of August 1988. She was also appointed as an assistant special prosecutor on another case which ended in a plea. Appellant's trial counsel averred that her representation of appellant did not begin until April of 1989, and was in no way affected by her limited experience with the prosecutor's office. As to her co-counsel, the state presented evidence that any relationship he may have had with the Lake County Prosector's Office ended in January 1988.
Aside from disputing that a conflict existed in trial counsel's representation of appellant, the state presented examples of the competent representation appellant received in the proceedings against him and the several inconsistencies that appellant's trial counsel was able to obtain from the victim as to her account of the incident. Ultimately, appellee argued, appellant's case fell from the weight of the substantial evidence presented proving his guilt.
Turning to appellant's accusations that the prosecution withheld evidence, the state asserted that appellant was given all the discovery that they were aware about and that appellant was entitled to receive. A prosecutor who worked on appellant's case submitted an affidavit to the trial court denying any knowledge of Ms. Parisi's involvement in, or treatment for, a car accident that occurred on February 1, 1988. Moreover, the prosecutor opined that even if the state possessed information of the victim's injuries from the car accident, the state "would not have felt that said information was remotely relevant to that case as the injuries Ms. Parisi sustained as a result of the rape and kidnapping were vastly different from those she sustained in the auto accident."
The victim's mother, a registered nurse, submitted an affidavit acknowledging that appellant was involved in an automobile accident and remained in the hospital for several days due to a leg injury. However, the victim's mother stated that the injuries her daughter sustained as a result of the car accident were far different from the severe bruising Ms. Parisi received in the incident involving appellant.
As to the remaining evidence appellant accused the state of withholding, appellee referenced to points in the trial record where appellant's attorney referred to prior statements made by Kathleen Vidmar as well as the supplementary office reports of the Grand River Police Department. The state noted that appellant's trial counsel also had the opportunity, pursuant to Crim.R. 16(B)(1)(g), to conduct an in camera inspection of these statements after the state concluded its direct examination of these witnesses. As to the statements of Colleen Vidmar and William W. Hood, who the state did not call to testify at trial, appellee asserted that any prior statements made by these witnesses actually implicated appellant to the crimes. Furthermore, the state asserted that any exculpatory material that may have existed in the prior statements of Colleen Vidmar and William W. Hood would not have changed the outcome of appellant's trial due to the substantial amount of evidence they presented at trial of his guilt.
By judgment entry filed July 7, 1997, the trial court determined that appellant failed to demonstrate sufficient facts from which to establish his claims for relief, and, therefore, was not entitled to an oral hearing on his petition for postconviction relief. From this judgment, appellant filed a timely notice of appeal and now asserts the following six assignments of error:
 "1. Appellant's right to counsel under the Ohio Constitution, Art. I Sec. 10, and/or the 6th and 14th amendments was denied when the trial court failed to obtain a valid waiver of counsel's conflict of interest, when the trial court breached its affirmative duty to inquire into such actual conflict of interest; denying appellant a fair trial.
 "2. Appellant's right to due process and a fair trial were violated under the 14th Amendment when the trial court denied his petition for postconviction relief based on newly discovered evidence showing the prosecution failed to disclose relevant favorable evidence to the defense.
 "3. Appellant was denied the right to compel witnesses to appear on his behalf, in violation of the 6th and 14th amendments; and/or to have process issue against such witnesses as required by the equal protection clause of the 14th Amendment.
 "4. Appellant was denied the effective assistance of trial counsel because the cumulative effect of counsel's deficient performance prejudiced appellant by making the verdict suspect and the proceedings fundamentally unfair.
 "5. Appellant was denied due process of law and his right to a fair trial when the prosecution knowingly presented falsified and perjured testimony in bad faith.
 "6. The cumulative effect of all the errors and all plain errors denied appellant due process of law and his right to a fair trial under the Ohio/United States Constitutions."
Before reaching the merits of appellant's assignments of error, we initially note that appellant's petition for postconviction relief was timely filed in the trial court. R.C.2953.21(A)(2), effective September 21, 1995, provides as follows:
 "A petition under division (A)(1) of this section shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication or, if the direct appeal involves a sentence of death, the date on which the trial transcript is filed in the supreme court. If no appeal is taken, the petition shall be filed no later than one hundred eighty days after the expiration of time for filing the appeal."
At first blush, it would appear that appellant's petition was not filed within the one hundred eighty-day time limit set forth in R.C. 2953.21. However, Section 3 of Senate Bill 4, amending R.C. 2953.21, contains the following savings language:
 "A person who seeks postconviction relief pursuant to sections 2953.21 through 2953.23 of the Revised Code with respect to a case in which sentence was imposed prior to the effective date of this act or to an adjudication as a delinquent child and order of disposition issued prior to the effective date of this act shall file a petition within the time required in division (A)(2) of section 2953.21 of the Revised Code, as amended by this act, or within one year from the effective date of this act, whichever is later."
Since appellant was convicted prior to September 21, 1995, his petition for postconviction relief, filed August 8, 1996, was timely. State v. Broome (Sept. 12, 1997), Geauga App. No. 96-G-2021, unreported; State v. Ankrom (June 30, 1997), Franklin App. No. 96APA11-1616, unreported; State v. Drake (Apr. 23, 1997), Lorain App. No. 96CA006551, unreported; State v. Brown (Mar. 10, 1997), Tuscarawas App. No. 96AP100083, unreported.
Next, we note that many of appellant's assignments of error are barred by the doctrine of res judicata. In State v. Perry
(1967), 10 Ohio St.2d 175, the Supreme Court of Ohio held:
 "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." Id. at paragraph nine of the syllabus. (Emphasis sic.) Accord State v. Reynolds (1997), 79 Ohio St.3d 158, 161.
In the present case, appellant makes a variety of accusations against his trial counsel, the trial court judge, the police, and the prosecutors that were involved in his case. Many of these accusations, particularly those found in all but part of his second and fourth assignments of error, are based on evidence that already existed in the trial court record and could have been raised in his direct appeal. For instance, appellant's accusation that the trial court judge knew about a potential conflict that existed with his trial attorney is based on hearing notices that were sent to the "Lake County Prosecutor, [appellant's trial attorney.]" Even if we were to make the inferential leap necessary to assume that this evidence established that the trial court was aware of a possible "conflict in interest," this information was already available in the trial record and could have been raised in appellant's direct appeal.
Likewise, additional evidence that appellant wished his attorney had presented at trial, such as prior statements made by Kathleen Vidmar, the supplementary police reports from the Grand River Police Department, as well as counsel's inability to secure Dr. Ruiz as a witness, already existed in the trial court record and could have been raised in his direct appeal. Any "error" as to the handling of this evidence, as well as trial counsel's handling of other evidence available to her at trial, cannot be raised in a petition for postconviction relief based on Perry and the doctrine of res judicata.
We also wish to emphasize that appellant has failed to present us with any evidence that the prosecution knew of the victim's automobile accident, or her injuries therefrom, that occurred roughly three weeks prior to her alleged attack. Appellant failed to present any evidence to establish that the prosecution presented "perjured testimony," wilfully excluded exculpatory evidence, or engaged in any activity to prevent appellant from calling witnesses in his defense. Moreover, appellant was unable to establish that a conflict of interest existed at the time he was receiving representation from his trial counsel. Appellant's trial counsel was appointed in April 1989, and there is no evidence that she was "moonlighting" as a special assistant prosecutor after this date.
For these reasons, we have limited our review of appellant's assigned errors solely to the alleged withholding by the prosecution of exculpatory information that may be contained in the prior statements of Colleen Vidmar and William W. Hood, as well as evidence appellant's trial counsel arguably should have found as to Ms. Parisi's automobile accident of February 1, 1988. As to these issues, and these issues only, we will discuss the trial court's decision to dismiss appellant's petition without first conducting a hearing. Except for the three areas of concern that we have highlighted, and that we will continue to highlight below, we affirm the trial court's judgment in all other respects.
R.C. 2953.21 provides, in pertinent part:
 "(C) * * * Before granting a hearing on a petition [for postconviction relief], the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript.
"* * *
 "(E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending."
From the statutory language, it is apparent that a hearing is not required in every postconviction relief proceeding but, rather, is discretionary with the trial court. State v. Strutton
(1988), 62 Ohio App.3d 248, 251. The court must determine whether there are substantive grounds for relief that would warrant a hearing, based upon the record and any supporting affidavits and documentary evidence before the court. State v. Guerriero (Sept. 26, 1997), Ashtabula App. No. 96-A-0078, unreported, at 4, citingState v. Jackson (1980), 64 Ohio St.2d 107, 110. Additionally, "[t]he general rule is that when determining whether there are substantive grounds for postconviction relief that would warrant a hearing, affidavits presented in support of the petition should be accepted as true. State v. Swortcheck (1995), 101 Ohio App.3d 770, 772." Guerriero, at 5.
In the case sub judice, appellant presented the trial court with a substantial amount of evidence to establish that the victim in this case was hospitalized for injuries she sustained roughly three weeks prior to the alleged incident with appellant. While the details are sketchy as to the exact injuries Ms. Parisi sustained as a result of the car accident, evidence was presented that she hit her head, was transported to the hospital with a concussion, her face was "badly bruised and swollen" on February 19th or 20th, 1988, and she sustained leg injuries. Assuming, as we must, that appellant's information is correct, the evidence submitted in his petition for postconviction relief raises questions as to the source of Ms. Parisi's claimed injuries, and, hence, could affect her credibility as to her accusations against appellant.
The state argued that Ms. Parisi's injuries from the car accident were vastly different from the ones she received in the incident with appellant and would have healed prior to February 27, 1988. The prosecutor's arguments may very well be true. However, without the trial court conducting a hearing, the parties' evidence on this issue remains untested and an evidentiary conflict exists as to the extent of the injuries Ms. Parisi sustained from the automobile accident of February 1, 1988, and whether these injuries were still visible at the time of the alleged incident with appellant.
In conjunction with our concerns about the evidence that appellant discovered outside of the trial court record, we are disturbed by a comment made in an affidavit from the former prosecuting attorney assigned to this case that, under the circumstances, she would not have provided appellant with information concerning Ms. Parisi's automobile accident even if said evidence was within the prosecutor's possession.[2] This statement undermines our faith in relying upon prosecutors to appreciate the value of evidence to the defense within their files, and voluntarily providing any exculpatory materials as required under Crim.R. 16(B)(1)(f) and the United States Supreme Court decision in Brady v. Maryland (1963), 373 U.S. 83. This leads us to appellant's accusations that the prosecution withheld possible exculpatory information contained in the statements of William W. Hood as well as further inconsistencies in the victim's account of the incident as conveyed to the police by Colleen Vidmar. Appellant argues that the state's failure to provide him with these statements was in direct violation of Brady.
The Cuyahoga County Court of Appeals has recently had the opportunity to address a case involving the nondisclosure of evidence to a criminal defendant. The court set forth an exhaustive, well-reasoned analysis of the state of the law on this issue. The court opined:
 "The court in Brady held that `the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to mguilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' Id. at 87 * * *. In United States v. Agurs (1976), 427 U.S. 97, * * * the court determined three situations in which a Brady
claim might arise. First, the claim might arise where previously undisclosed evidence revealed that the prosecution introduced trial testimony that it knew or should have known was perjured. Id. at 103-104, * * *. Second, the claim might arise where the government failed to accede to a defense request for disclosure of some specific kind of exculpatory evidence. Id. at 104-107, * * *. Third, the claim might arise where the government failed to volunteer exculpatory evidence which was never requested, or requested only in a general way. The court in Agurs found a duty on the part of the government in this situation when the suppression of the evidence would be `of significance to result in the denial of the defendant's right to a fair trial.' Id. at 108, * * *.
 "The court in United States v. Bagley
(1985), 473 U.S. 667, 682, * * * stated that `evidence is "material" only if there is, a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. "A reasonable probability" is a probability sufficient to undermine confidence in the outcome.'
 "The court in Kyles v. Whitley (1995), 514 U.S. 419, * * * outlined the four aspects of materiality under Bagley, supra, stating: `Although the constitutional duty is triggered by the potential impact of favorable but undisclosed evidence, a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant).' Id. at 434, * * *.
"The Kyles court further stated:
 "`Bagley's touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the Government's evidentiary suppression "undermines confidence in the outcome of the trial." Bagley, 473 U.S. at 678 * * *.
 "`The second aspect of Bagley
materiality bearing emphasis here is that it is not a sufficiency of evidence test. A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict. * * * One does not show a Brady
violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.
 "`Third, we note that * * * once a reviewing court applying Bagley has found constitutional error there is no need for further harmless error review. * * *
 "`The fourth and final aspect of Bagley
materiality to be stressed here is its definition in terms of the suppressed evidence considered collectively, not item-by-item.' (Footnotes omitted.) Kyles, supra, 514 U.S. at 434-436, * * *; see State v. Apanovitch (Nov. 9, 1995), Cuyahoga App. No. 68742, unreported, at 13." State v. Apanovitch (1996), 113 Ohio App.3d 591, 594-595. (Parallel citations omitted.) See, also, State v. Gondor (Dec. 19, 1997), Portage App. No. 96-P-0261 and 97-P-0017, unreported.
The prosecution does not deny appellant's claim that the defense was not afforded an opportunity, at some point, to view the witness statements made to the police by Colleen Vidmar and William W. Hood. However, the trial court found no evidence to suggest that the prosecution willfully withheld discovery to the petitioner and that any misconduct that may have occurred did not materially affect the outcome of appellant's trial.
We agree with the trial court's conclusion that appellant did not establish that the prosecution willfully failed to disclose information that they knew would be favorable to the defense. It appears that the prosecutors failed to acknowledge the potential exculpatory nature of this evidence, and, instead, focused on the parts of the statements that implicated appellant to the crime. However, irrespective of the prosecution's intent in failing to disclose this evidence, appellant has presented us with witness statements, outside of the record, that present questions as to the extent of the victim's injuries prior to the alleged incident with appellant as well as exposing possible inconsistencies in the victim's report of the incident. Arguably, the sum of this evidence presented in appellant's petition, and highlighted in this opinion, could provide substantive grounds for relief. This is particularly so in a case, such as this one, where there is no physical evidence linking appellant to the crime and the case boils down to the credibility of two persons, the victim and the accused. The trial court should have conducted a hearing on appellant's claims as highlighted in this opinion. Appellant's second and fourth assignments of error have some merit. The remainder of his arguments, as previously discussed, are wholly unsupported or barred under the doctrine of res judicata, and, therefore, without merit.
While we are reversing, in part, the trial court's decision with regard to appellant's petition for postconviction relief, we wish to emphasize that appellant has not proven that the prosecution willfully failed to disclose favorable evidence to the defense, as argued within his second assignment of error, or that appellant's trial counsel was wholly ineffective, as alleged within his fourth assignment of error. Notwithstanding this determination, however, we believe that appellant, under the circumstances of this case, has presented sufficient evidence outside of the trial court record to warrant further review of some of the arguments made within these two assignments of error. Specifically, the trial court is instructed to conduct an evidentiary hearing as to the extent of any injuries the victim may have sustained immediately before and after the alleged incident with appellant as well as evaluating any inconsistencies that may develop in the victim's report of the crime.
Based on the foregoing, the judgment of the trial court is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion. __________________________________ JUDGE WILLIAM M. O'NEILL
NADER, P.J.,
MAHONEY, J., (Joseph), Ret., Eleventh Appellate District, sitting by assignment, concur.
[1] Contrary to her trial testimony that she entered appellant's car voluntarily and without incident at the Honky Tonk saloon, Ms. Parisi told police approximately three weeks after the incident that one of appellant's friends grabbed her outside of the bar and pushed her into the accused's vehicle.
[2] Arguably, appellant's claims that he was denied the effective assistance of trial counsel based on newly discovered evidence of Ms. Parisi's automobile accident of February 1988 were barred under the doctrine of res judicata. If we are to fault appellant's trial counsel for failing to discover this "critical" information for trial pursuant to the standard announced in Strickland v. Washington (1984), 466 U.S. 668, presumably the enormity of counsel's ineffectiveness could have been discovered and raised in appellant's direct appeal. In the alternative, this new evidence may have formed the basis for appellant requesting a new trial pursuant to Crim.R. 33 as opposed to a claim in a postconviction relief petition.
Both the prosecution and the trial court discussed the issue regarding the victim's accident on the merits, and, in the interest of justice, we have also addressed appellant's arguments as to this issue. We must note, however, that the comment by the former prosecutor as to the state's unwillingness to provide appellant with information concerning the victim's auto accident of February 1988, even if such evidence existed in the state's files, has influenced our decision in addressing this particular area of concern.