OPINION
This appeal is taken from a final judgment of the Trumbull County Court of Common Pleas. Appellant, Robert J. Smith, appeals from the second denial of his petition for postconviction relief.
The facts of this case were previously detailed in this court's opinion in State v. Smith (Sept. 30, 1993), Trumbull App. No. 91-T-4610, unreported, 1993 WL 407301 ("Smith I"). Consequently, we will only give a brief encapsulation here.
In September 1990, the Trumbull County Grand Jury indicted appellant on two counts of robbery in violation of R.C. 2911.02. Count One related to the robbery of a branch of the Second National Bank in Warren, Ohio on September 19, 1990. Count Two was based on the robbery of a Bank One branch on West Market Street in Warren on September 14, 1990.
Thereafter, in January 1991, a different session of the grand jury indicted appellant under R.C. 2911.01 for the aggravated robbery of a Bank One branch on Mahoning Avenue in Warren on January 5, 1991. This became Count Three when the two cases against appellant were consolidated for trial.
Prior to trial, counsel for appellant filed a motion for the disclosure of all evidence of an exculpatory nature. The request was made pursuant to Crim.R. 16(B)(1) and Brady v. Maryland
(1963), 373 U.S. 83, and its progeny.
On July 23, 1991, the matter came on for trial. The jury acquitted appellant on Count Two, but convicted him of aggravated robbery as charged in Count Three. With respect to Count One, the jury convicted appellant of the lesser included offense of theft in violation of R.C. 2913.02. The trial court ordered appellant to serve consecutive indefinite prison terms of three to five years on Count One and fifteen to twenty-five years on Count Three.
From this judgment, appellant filed a direct appeal in which he raised eleven assignments of error. This court affirmed his convictions in Smith I. Appellant's request for jurisdiction was overruled by the Supreme Court of Ohio.
Appellant subsequently filed a pro se petition for postconviction relief on September 13, 1996.[1] Thirteen evidentiary documents were appended to the petition. Although appellant did not identify individual claims for relief, the petition contained three basic allegations: (1) the state withheld exculpatory evidence from the defense, despite the Crim.R. 16(B) request for the disclosure of such evidence; (2) Detective Sergeant William Carnahan ("Detective Sergeant Carnahan") of the Warren Police Department offered false testimony against appellant at trial; and (3) Detective Sergeant Carnahan tampered with certain items of evidence.
Appellant maintained that these violations deprived him of the right to a fair trial and due process of law under both the United States Constitution and the Ohio Constitution. All three of the allegations related to the investigation and subsequent prosecution of appellant for the aggravated robbery of the Bank One branch on Mahoning Avenue. Thus, appellant essentially requested that the trial court vacate his conviction and sentence with respect to Count Three.
On October 16, 1996, the trial court dismissed the petition without a hearing. In doing so, the trial court issued brief findings of fact and conclusions of law. In this entry, the trial court seemed to imply that it relied at least in part on the doctrine of res judicata as a ground upon which to dismiss appellant's postconviction relief petition. Beyond this, the trial court also summarily indicated that appellant failed to substantiate that the state withheld exculpatory evidence.
On appeal, this court reversed the judgment of the trial court. See State v. Smith (Dec. 5, 1997), Trumbull App. No. 96-T-5595, unreported, 1997 WL 772938 ("Smith II"). The primary basis for the reversal was the inadequacy of the trial court's findings of fact and conclusions of law.
In Smith II, we noted that the trial court failed to articulate how res judicata was applicable. Moreover, the trial court summarily concluded that appellant had not presented sufficient documentation of a discovery violation, but did not explain why certain exhibits attached to the petition did not constitute exculpatory evidence. Finally, the trial court did not address other exhibits submitted by appellant or the issue of evidence tampering.
For all of these reasons, we reversed the judgment of the trial court and remanded the matter for further proceedings. On remand, the case was reassigned to a different judge because the judge who had originally ruled on appellant's postconviction relief petition retired during the pendency of the appeal in Smith II.
Thereafter, the trial court again dismissed appellant's petition without an evidentiary hearing. This time, however, the trial court issued more detailed findings of fact and conclusions of law to support its adjudication of the petition.
From the second denial of his petition for postconviction relief, appellant filed a timely notice of appeal with this court. He now asserts the following assignment of error:
 "The trial court erred and/or abused it's [sic] discretion to the prejudice of appellant for its failure to conduct an evidentiary hearing and vacate appellant's sentence."
Within this assignment of error, appellant puts forth three issues for review: (1) the trial court's findings of fact and conclusions of law did not properly evaluate the claims for relief contained in the petition and are replete with factual and legal errors; (2) the findings of fact and conclusions of law are unsupported by the evidence in the record and are contrary to this court's mandate in Smith II; and (3) the trial court should have vacated appellant's conviction for aggravated robbery because the petition contained numerous evidentiary documents which fully supported his claims to the effect that the state withheld exculpatory evidence and that Detective Sergeant Carnahan testified falsely at trial and tampered with evidence. These issues will be addressed within the context of a single, comprehensive analysis of the assigned error.
The crux of appellant's position is that the trial court should have vacated his aggravated robbery conviction or, in the alternative, conducted an evidentiary hearing based on the postconviction relief petition and supporting documentation. A petitioner attempting to have a criminal conviction vacated through a petition for postconviction relief, however, is not automatically entitled to an evidentiary hearing. State v. Cole
(1982), 2 Ohio St.3d 112, 113; State v. Jackson (1980), 64 Ohio St.2d 107,110; State v. Worthy (May 30, 1997), Portage App. No. 96-P-0122, unreported, at 5, 1997 Ohio App. LEXIS 2370.
By its own terms, R.C. 2953.21(C) indicates that the trial court shall determine whether there are substantive grounds for relief before granting a hearing. In making this determination, the trial court must consider the petition, supporting affidavits, and the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, journal entries, the clerk's records, and transcripts. R.C.2953.21(C).
Thus, the key issue is whether the aforementioned documents establish any substantive ground for relief. If no such basis for relief exists, then the trial court may dismiss the petition without conducting a hearing. Upon doing so, the trial court must make and file findings of fact and conclusions of law which explain the reasons underlying the dismissal. Id.; State v.Mapson (1982), 1 Ohio St.3d 217, 218.
An appellate court applies a hybrid standard of review to the trial court's disposition of a postconviction relief petition. The court of appeals should accept the trial court's factual findings if they are supported by competent, credible evidence. Upon accepting such findings of fact, the reviewing court should then conduct a de novo review of the trial court's conclusions of law and concomitant adjudication of the postconviction relief petition.[2] See, generally, State v. Isham (Aug. 23, 1995), Montgomery App. No. 15136, unreported, at 4-5, 1995 Ohio App. LEXIS 3424.
As stated previously, appellant's postconviction relief petition related solely to the investigation into the robbery of the Mahoning Avenue Bank One branch on January 5, 1991. He attached thirteen exhibits to the petition in an effort to validate his claims of constitutional violations warranting the vacation of his conviction for aggravated robbery. We will briefly review the trial court's treatment of each exhibit and whether these attachments established a substantive ground for relief.
Exhibit 1 is a copy of the motion for the disclosure of exculpatory evidence filed by defense counsel prior to trial. Since the original motion is itself in the record, the copy merely serves to substantiate that such a request was made. Exhibit 2 is a copy of an original action for a writ of mandamus filed against the custodian of records at the Warren Police Department. It documents appellant's efforts to obtain copies of certain police investigatory records through the mandamus proceeding. Exhibit 3 is a copy of a letter from the Warren Law Department to appellant indicating that the city had turned over all of the documents requested in the mandamus action.
The trial court correctly noted that Exhibits 1 through 3 were simply supporting documentation that did not establish any of the three alleged constitutional violations put forward in appellant's petition. As such, they did not provide a substantive ground for relief.
Exhibit 4 is a handwritten incident report from the Warren Police Department detailing the January 5, 1991 robbery of the Bank One branch on Mahoning Avenue. This report described the suspect's hair as being "Lt Bln" and contained various other identifying features relating to the appearance of the bank robber. Such other features included that the suspect had spiked hair, needed a shave, and wore a medium gray waist jacket.
Exhibit 5 is a typed version of the same incident report prepared by Detective Sergeant Carnahan. On this report, Detective Sergeant Carnahan typed "Brn." as the description of the suspect's hair. The other characterizations relating to the suspect's appearance were the same on Exhibit 5 as they had been on Exhibit 4. Exhibit 5 was introduced at trial; therefore, the defense was fully apprised of its existence.
Exhibit 6 is a typed statement signed by Shirley Eisenhuth and dated January 5, 1991. Eisenhuth was the bank teller whom appellant confronted with a note demanding money during the bank robbery. On this document, the suspect is described as having sandy blond hair.
Exhibit 7 is a two-page set of handwritten notes taken at police headquarters as Eisenhuth viewed a photographic lineup which contained a picture of appellant. The notes are dated January 7, 1991. The first page of the notes indicate that Eisenhuth selected appellant's photograph from the five pictures comprising the lineup. On the second page, there is a first-person description of the bank robbery, along with other notations. It is unclear who penned the notes because they are unsigned. Appellant, however, claims that Detective Sergeant Carnahan authored the notes on the first page and the notations on the second page, while Eisenhuth allegedly wrote the description of the robbery as it appeared on page two.
In his petition, appellant made various assertions of police misconduct relating to Exhibits 4 through 7. These included the following: (1) Exhibit 4 constituted exculpatory evidence that had been withheld from the defense; (2) Exhibit 4 was exculpatory because it described the suspect's hair as light blond, whereas the typed version of the incident report (i.e., Exhibit 5) referred to the suspect's hair as being brown; (3) Exhibit 6 was actually a typed version of the handwritten description of the robbery as it appeared on the second page of the Exhibit 7 notes from January 7, 1991; (4) the description of the robber on page two of Exhibit 7 was written by Eisenhuth only after she had been influenced by viewing the photographic lineup; (5) Detective Sergeant Carnahan tampered with evidence by "back dating" Exhibit 6 to make it appear that it had been prepared on January 5, 1991 and signed by Eisenhuth on the same day; (6) Detective Sergeant Carnahan testified falsely at trial that Exhibit 6 was prepared and signed on January 5, 1991.
In Smith II, this court discussed the concept of Brady material and how a postconviction relief petitioner could establish a Brady
violation. We will briefly recap that discussion.
In Brady, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." See, also, State v. Johnston (1988),39 Ohio St.3d 48, paragraph four of the syllabus; State v.Aldridge (Mar. 14, 1997), Montgomery App. No. 15785, unreported, at 42-43, 1997 Ohio App. LEXIS 891. In order to establish a violation, the petitioner must demonstrate three elements: (1) the prosecution failed to disclose evidence upon request; (2) the evidence was favorable to the defense; and (3) the evidence was material. See Moore v. Illinois (1972), 408 U.S. 786.
Both exculpatory and impeachment evidence may be the subject of a Brady violation as long as the evidence is "material." UnitedStates v. Bagley (1985), 473 U.S. 667. With respect to the materiality prong, the United States Supreme Court has stated:
"Bagley's touchstone of materiality is a `reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A `reasonable probability' of a different result is accordingly shown when the Government's evidentiary suppression `undermines confidence in the outcome of the trial.'" (Citations omitted.) Kyles v. Whitley (1995), 514 U.S. 419, 434.
In Smith II, this court noted that the trial court summarily determined that the exhibits attached to appellant's petition did not constitute Brady material. Although Kyles
permits the trial court to render a collective judgment, rather than an item-by-item assessment, that withheld evidence is not exculpatory, we concluded that the trial court was at least obliged to recite the underlying rationale for that determination. Smith II, 1997 WL 772938, at 4.
On remand, the trial court again concluded that Exhibits 4 through 7 did not constitute Brady material that was improperly withheld by the prosecution. This time, however, the trial court issued a much more extensive explanation to justify its decision. The trial court wrote:
 "8. This Court concludes that when Petitioner's Exhibits 4, 5, 6, and 7 are considered together, some descriptions of the robber's hair color vary slightly, but the hair style is consistent among all these evidentiary documents. To wit, all four exhibits relate that the robber had "spiked" hair. This Court finds such a styling is fair [sic] more distinctive than virtually any hair coloring. Furthermore, all of the hair coloring descriptions, though varying in exact terminology, indicate that the robber had light colored hair.
 "9. This Court further concludes that other descriptions in Exhibits 4, 5, 6, and 7 are perfectly consistent with one another in that the robber was a male, Caucasian, dressed in a grey jacket and slacks, in his mid thirties, and medium or stocky build and height. * * *" (Emphasis sic.)
Furthermore, with respect to appellant's specific claims about Exhibit 6, the trial court observed:
 "6. Petitioner's Exhibit 6 is not exculpatory, [and] does not indicate perjured testimony or evidence tampering on the part of Det. Sgt. Carnahan. Petitioner claims that this document was `back dated,' but offers no proof thereof. It is clear from both Det Sgt. Carnahan and Mrs. Eisenhuth's testimony that she gave a statement to Warren Police Jan. 5, 1991 and viewed the photo spread and the Diebold still photos on Monday, Jan. 7, 1991, two days after the robbery. * * *"
Upon review, we determine that the trial court complied with our previous mandate in Smith II. It gave a more detailed recitation of its reasons for dismissing appellant's claims of constitutional violations evidenced by Exhibits 4 through 7.
Beyond this, we agree that even taken collectively, these documents did not provide substantive grounds for the relief requested by appellant. Exhibits 4 through 7 did not manifest sufficient operative facts to substantiate appellant's allegations that Brady material was improperly withheld from the defense, that Detective Sergeant Carnahan testified falsely at trial, or that the detective tampered with evidence.[3]
Finally, this court previously addressed the basic crux of appellant's postconviction relief petition, to wit: that the alleged discrepancies in the descriptions of the suspect's hair color evidence the fact that he has been wrongfully convicted as a result of misconduct by the police and the prosecution:
"[W]e agree with the trial court's determination that appellant's attorney `was aware of the alleged in discrepancies the description of the hair color and that the State's witnesses were in fact cross-examined regarding these discrepancies.' The record indicates that the varying references to the suspect's hair color (light blond, brown, and sandy blond) in the various reports were addressed during the cross-examinations of Detective Sergeant Carnahan and Shirley Eisenhuth. * * * Furthermore, the discrepancies between Detective Sergeant Carnahan's report and his direct examination testimony were addressed during cross-examination of Detective Sergeant Carnahan, and also during the examination of Shirley Eisenhuth. Thus, appellant's attempt to characterize the information in these reports as being material and exculpatory is not well-grounded. Moreover, aside from the discrepancies in hair color, we note that the testimony elicited from the trial witnesses regarding the other aspects of appellant's physical appearance adequately supports the jury's determination that appellant was the party who committed the crimes." (Footnote omitted.) Smith II, 1997 WL 772938, at 4.
For all of these reasons, Exhibits 4 through 7 did not warrant an evidentiary hearing or the vacation of appellant's aggravated robbery conviction. The trial court did not err in evaluating the import of these documents.
Exhibit 8 is a description of the robber purportedly written by Eisenhuth. The description is written on a form provided by Bank One to its employees. The trial court concluded that appellant had offered no proof that Detective Sergeant Carnahan or any other member of the Warren Police Department played any role in the preparation of this document. Moreover, the trial court found that Exhibit 8 did not serve to support any of the claims made in his petition. We agree with the trial court's conclusions.
Exhibits 9 and 10 are typed investigative reports prepared by Detective Sergeant Carnahan. They constitute written updates concerning the status of the investigation into the bank robbery. Exhibit 9 contains the name of a male customer who was in the bank at the time of the robbery. Exhibit 10 lists the name of man who supposedly saw a white male with a blond crew cut hurry past him near the bank on the day of the robbery.
In Smith II, we noted that the trial court had failed to articulate specific findings of fact and conclusions of law with respect to Exhibits 9 and 10. On remand, the trial court did address these exhibits in detail.
The trial court essentially concluded that appellant did not offer any evidence to establish that the names of the two men were not supplied to the defense or that either man had any material knowledge that was pertinent to the investigation into the bank robbery. Moreover, Crim.R. 16(B)(1)(e) only requires that the prosecution supply the defense with the names and addresses of those individuals whom the state intends to call as witnesses. In this case, the state did not call either man mentioned in Exhibits 9 or 10 to testify at trial. The trial court's disposition of these exhibits was more than sufficient to comply with our mandate in Smith II.
Exhibit 11 is a typed statement signed by Robert Ray Reese ("Reese"). In the statement, Reese indicated that he and appellant roomed together for approximately one and one-half months. Reese further stated that appellant talked constantly about robbing a bank. In Smith II, we held that the trial court did not satisfy its burden under R.C. 2953.21(C) to issue findings of fact and conclusions of law with respect to Exhibit 11.
On remand, the trial court concluded that this exhibit was not indicative of a discovery violation because it was clearly inculpatory, not exculpatory, in nature. Furthermore, Reese testified consistently with the typed statement at trial and was subject to cross-examination. Upon reviewing the trial court's treatment of Exhibit 11, we agree that no hearing was required based on this document.
Exhibit 12 is a report from the Federal Bureau of Investigation stating that no latent fingerprints were found on the note that the bank robber passed to Eisenhuth. After this court noted the absence of findings regarding this report in Smith II, the trial court did discuss Exhibit 12 on remand. The trial court found that appellant submitted no proof that this document was not supplied to his trial counsel during the normal course of discovery. Beyond this, the trial court cited State v. Apanovitch
(1996), 113 Ohio App.3d 591, for the proposition that a report to the effect that no latent fingerprints were retrieved from an object is neither exculpatory nor material for purposes ofBrady.[4] Again, we agree with the trial court's conclusions.
Finally, Exhibit 13 is an affidavit from appellant in which he averred that he was not guilty of the Bank One robbery and that the allegations in his postconviction relief petition were true to the best of his knowledge. The trial court found that the affidavit did not provide a substantive ground for relief. We agree. See State v. Combs (1994), 100 Ohio App.3d 90, 98 (holding that evidence dehors the record in the form of a petitioner's own self-serving affidavit alleging a constitutional deprivation will not compel a hearing).
In the case at bar, the trial court carried out its duty under R.C. 2953.21(C) to determine whether appellant presented substantive grounds for relief. In making this determination, the trial court considered the petition, the supporting exhibits and affidavit, and the files and records pertaining to the proceedings against appellant. Because these documents did not establish any valid basis for relief, the trial court did not err by dismissing the petition without conducting a hearing.
Based on the foregoing analysis, the assignment of error lacks merit. Accordingly, the judgment of the trial court is affirmed.
 _____________________________________________ PRESIDING JUDGE JUDITH A. CHRISTLEY
NADER, J., O'NEILL, J., concur.
[1] In State v. Watters (Dec. 26, 1997), Trumbull App. No. 96-T-5606, unreported, at 2, fn. 4, 1997 WL 799508, this court held that for those prisoners convicted and sentenced prior to September 21, 1995, the deadline for filing a postconviction relief petition was September 23, 1996. In the instant case, appellant's petition was timely because he filed it by the deadline. See, also, State v. Powell (May 14, 1999), Portage App. No. 98-P-0060, unreported, at 5-7, 1999 Ohio App. LEXIS 2200.
[2] On occasion, this court has observed that the trial court's decision with respect to a postconviction relief petition will not be reversed in the absence of an abuse of discretion. See,e.g., State v. Lundgren (June 26, 1998), Lake App. No. 97-L-196, unreported, at 11, 1998 Ohio App. LEXIS 2926; State v.Allen (Sept. 23, 1994), Lake App. No. 93-L-123, unreported, at 1, 1994 WL 590342. Other appellate courts have likewise held that the trial court's decision is subject to review for an abuse of discretion. See, e.g., State v. Chafin (Mar. 25, 1999), Franklin App. No. 98AP-865, unreported, at 5, 1999 Ohio App. LEXIS 1470;State v. Benge (Apr. 27, 1998), Butler App. No. CA97-08-163, unreported, at 7, 1998 Ohio App. LEXIS 1764.
Upon consideration, we do not believe that such cases accurately state the standard of review applicable to petitions for postconviction relief. The adjudication of claims for relief predicated on alleged violations of the petitioner's constitutional rights is not a matter that falls exclusively within the trial court's discretion. For instance, the trial court may dismiss a claim for relief based on res judicata
grounds. On review, the court of appeals must determine as a matter of law whether res judicata functioned as a bar to the claim for relief.
Thus we believe that the hybrid analysis described herein is a more precise statement of the applicable standard of review, rather than the phrase "abuse of discretion."
[3] In Smith II, we noted that Exhibits 5 and 6 specifically did not form the basis of valid Brady claims since both were raised at trial during the testimony of Detective Sergeant Carnahan.
[4] If someone else's fingerprints had been found on the note, other than prints traceable to appellant or Eisenhuth, then such a report would have had potential exculpatory value. As the state points out in its brief, however, the absence of legible fingerprints on the note hardly establishes that appellant did not handle the note during the course of the bank robbery.