The STATE of Ohio, Appellee,

v.

KALEJS, Appellant. (Two cases).

[Cite as *State v. Kalejs,* 150 Ohio App.3d 465, 2002-Ohio-6657.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–000668, C–010627, C–000663 and C–010644.

Decided Dec. 6, 2002.

**466**

Michael K. Allen, Hamilton County Prosecuting Attorney, and Philip R. Cummings, Assistant Prosecuting Attorney, for appellee.

Law Office of Geoffrey W. Pittman Co., L.P.A., and Geoffrey W. Pittman, for appellant Gary Kalejs.

Arenstein & Gallagher and Hal R. Arenstein, for appellant Gregory Kalejs.

---

Doan, Presiding Judge.

{¶ 1} Defendants-appellants, Gary Kalejs and Gregory Kalejs, appeal convictions for burglary. Gary was originally indicted on two counts of aggravated arson, one count of aggravated burglary, and one count of intimidation of a witness. His brother, Gregory, was indicted on two counts of aggravated arson, one count of aggravated burglary, one count of aggravated robbery, and two counts of felonious assault.

{¶ 2} The events that produced the charges occurred during a party in an apartment leased by Hope Rehn, with whom Gary was living. Fred Davis occupied the apartment next door. The state's theory of the case was that while

Davis was drunk and incapacitated in Rehn's apartment, Gary, Gregory, and two other codefendants, Steve Sampson and Bobby Ingram, went into Davis's apartment and stole various items. Then Gary, Gregory, and Ingram poured lighter fluid on Davis's bed and set it on fire. When the fire started to burn out of control, the occupants of Rehn's apartment began leaving the building. Before leaving, Gregory struck the still unconscious Davis with a chair and took various items out of his pockets. Several days later, Gary threatened Ingram with harm if he told the police what had happened that night.

{¶ 3} At trial, numerous witnesses for both the state and the defense testified to differing versions of events. Their testimony varied not only as to minor details, but also as to the major events of the evening. Witnesses were frequently impeached with prior statements given to fire investigators during a long investigation. Further, much of the testimony focused upon how and by whom the fire was started.

{¶ 4} The witnesses who provided most of the proof for the burglary charges were Jamie Middleton and Jennifer Lanzilotta. Middleton testified that when she arrived at the party at approximately seven or eight o'clock, the persons at the party had been drinking and taking drugs. Davis was in Rehn's apartment when Middleton arrived, and he was severely intoxicated. Middleton stated that while Rehn distracted Davis, Gary and Gregory were going in and out of Davis's apartment and taking his belongings. They took everything he had of value and hid it in a closet in Rehn's apartment.

{¶ 5} Middleton stayed at the party approximately two to two and one-half hours. She then left to pick up a friend from work and run some errands. When she arrived back at the apartment building, she ran into Jennifer Lanzilotta, who was upset and afraid, coming down the steps. Upon going up the stairs to Rehn's apartment, Middleton then smelled smoke and realized something was on fire.

{¶ 6} She helped Rehn, who was extremely intoxicated, out of the building. She later saw Gary drag Davis down the stairs. She noticed that Davis had blood all over his head. She heard Gregory state that he had "bashed him up side his head with this chair." She admitted, however, that she never told the police or fire investigators that she had heard this statement.

{¶ 7} The next day, Middleton went back to Rehn's apartment and saw bloodstains on the carpet. Some time later, Gary came to her house and told her that if the investigation continued, she could be a suspect, and this statement made her feel afraid.

{¶ 8} Jennifer Lanzilotta testified that she arrived at the parking lot to Rehn's apartment building shortly before 1:00 a.m. As she approached the

building, she saw Gary coming out with a VCR. She remarked that she did not know that he had a VCR, and he replied that the party had been moved to Davis's apartment.

{¶ 9} She then went up to Davis's apartment and found Gregory and Sampson going through cabinets and drawers. She heard Ingram in the bedroom. She then left and went over to Rehn's apartment, where she saw Davis, who was highly intoxicated, sitting in a chair. Sometime later, after various persons came and went between the two apartments, the occupants of Rehn's apartment smelled smoke. Gary left the apartment and came back, stating that the apartment next door was on fire. They left the building, and Lanzilotta got in her car and left the scene.

{¶ 10} The next day, Lanzilotta saw Gary at a friend's apartment, and he told her that Ingram had started the fire. When she asked why he had not reported Ingram to the police, Gary stated that his prints were on the can of lighter fluid and that he did not "want to be a part of it."

{¶ 11} The jury eventually acquitted Gregory of all charges against him, except count three. On that count, it found him not guilty of aggravated burglary, but guilty of the lesser offense of burglary pursuant to R.C. 2911.12(A)(2). The jury found Gary guilty of the lesser offense of burglary pursuant to R.C. 2911.12(A)(3). It acquitted him of the final count of intimidation of a witness, but it could not reach a verdict on the two arson counts against him.

{¶ 12} During Gary's second trial on the arson counts, of which he was ultimately acquitted, the state produced a statement that Middleton had given to fire investigators early in the investigation that had been found in the case jacket. This statement had not been produced during discovery and has not been given to defense counsel during the first trial. At that time, the state had produced only a later taped statement made while Middleton, Lanzilotta, and another witness met together with the fire investigator. That taped statement was taken because the fire investigator did not believe Middleton's first statement. Nevertheless, he stated that he had turned Middleton's statement over to the prosecutor before the first trial.

{¶ 13} Middleton's original statement to the investigator differed sharply from her trial testimony. She stated on the tape that there was a lot of talk going around about the events of the night of the fire and that she did not know whether to believe the talk. She stated that people had told her that Ingram had started the fire. Further, she said that she was at the party for approximately two hours before leaving at about 10:00 p.m. to pick up her friend, that it was "one of the calmest parties they ever held," and that the people present were talking and playing cards. She said that nothing unusual happened and that no one was drinking excessively or using drugs. She also stated that Lanzilotta was

present only for approximately fifteen minutes, all of which was while Middleton herself was present, and that Lanzilotta could not have seen anything happen, since she left before the fire occurred.

{¶ 14}  After discovering the existence of this tape, Gary and Gregory both filed motions for new trials on the burglary charges, in which they contended that the state had improperly failed to provide them with exculpatory evidence.  The trial court overruled both motions.  This appeal followed.

{¶ 15}  Appellants both raise assignments of error in which they contend that the trial court erred in overruling their motions for new trials.  They argue that the prosecution's failure to disclose exculpatory evidence prior to the first trial violated their rights to due process and to a fair trial.  We find this assignment of error to be well taken.

{¶ 16}  In *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215, the United States Supreme Court held that the prosecution's suppression of evidence favorable to the accused violates due process where the evidence is material to guilt or punishment, regardless of the prosecution's good or bad faith.  *State v. Johnston* (1988), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph four of the syllabus.  Evidence is material if a reasonable probability exists that had the state disclosed the evidence to the defense, the result of the proceeding would have been different.  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.  *United States v. Bagley* (1985), 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481; *Johnston*, supra, at paragraph five of the syllabus.

{¶ 17}  This is a less stringent burden for the defendant to meet than the standard for granting a new trial generally on the basis of newly discovered evidence, which requires a showing that the newly discovered evidence probably would have resulted in an acquittal.  *Johnston*, supra, 39 Ohio St.3d at 60, 529 N.E.2d 898.  See, also, *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, at ¶ 85; *State v. Petro* (1947), 148 Ohio St. 505, 36 O.O. 165, 76 N.E.2d 370, syllabus.  The United States Supreme Court has held that a showing of materiality does not require the defendant to demonstrate that disclosure of the evidence would have resulted in the defendant's acquittal, but rather that absent the exculpatory evidence, the defendant did not receive a fair trial.  *Kyles v. Whitley* (1995), 514 U.S. 419, 434–437, 115 S.Ct. 1555, 131 L.Ed.2d 490; *State v. Apanovitch* (1996), 113 Ohio App.3d 591, 594–595, 681 N.E.2d 961; *State v. Henderson* (June 9, 2000), 1st Dist. No. C–990657, 2000 WL 731472.

{¶ 18}  Further, materiality is not a sufficiency-of-the-evidence test.  A defendant need not prove that with the inculpatory evidence, discounted in light of the exculpatory evidence, the state did not have enough evidence to convict.  Instead, the defendant must show that the favorable evidence puts the whole case

in a different light so as to undermine confidence in the outcome. *Kyles,* supra, 514 U.S. at 434–437, 115 S.Ct. 1555, 131 L.Ed.2d 490; *Apanovitch,* supra, 113 Ohio App.3d at 594–595, 681 N.E.2d 961; *Henderson,* supra.

{¶ 19} These rules apply equally to impeachment evidence, which, if disclosed by the state and used effectively by the defense, may make the difference between conviction and acquittal. *Bagley,* supra, 473 U.S. at 676, 105 S.Ct. 3375, 87 L.Ed.2d 481; *State v. Aldridge* (1997), 120 Ohio App.3d 122, 137, 697 N.E.2d 228; *Henderson,* supra. "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Bagley,* supra, at 676, 105 S.Ct. 3375, 87 L.Ed.2d 481, quoting *Napue v. Illinois* (1969), 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217.

{¶ 20} All of the charges against both defendants in this case were tried together, and the state's evidence as to all the charges was, to some extent, intertwined. The state's evidence in general had numerous problems. The testimony of the state's witnesses varied significantly. The investigation conducted by the fire investigators involved some irregularities, not the least of which was that they interviewed Middleton, Lanzilotta, and another important witness together, thus allowing contamination of their memories and their stories. Further, much of the state's case turned upon Ingram's testimony, whose credibility, given the overall state of the evidence, was doubtful. All of these problems likely led to the acquittals on most of the charges.

{¶ 21} Middleton's taped statement contained exculpatory evidence in that she said that the party was calm and that nothing unusual happened. Further, the jury clearly found Middleton's and Lanzilotta's testimony to be credible, since they were the only witnesses to provide substantial proof on the burglary charges, the only charges upon which Gary and Gregory were convicted. Middleton's taped statement directly contradicted her trial testimony and could have cast substantial doubt upon that testimony. Further, it also could have cast doubt upon Lanzilotta's testimony, since Middleton stated that Lanzilotta was not at the apartment at the time she claimed to be.

{¶ 22} Given the state of the evidence, we hold that the failure to disclose Middleton's taped statement was sufficient to undermine confidence in the outcome of the trial. Consequently, the evidence was material within the meaning of *Brady,* and the state violated due process by failing to disclose it. See *Bagley,* supra, 473 U.S. at 683–684, 105 S.Ct. 3375, 87 L.Ed.2d 481; *State v. Resh* (1997), 124 Ohio App.3d 694, 704–706, 707 N.E.2d 531; *Henderson,* supra.

{¶ 23} Accordingly, we sustain Gregory's second assignment of error and Gary's first and second assignments of error as they relate to the *Brady* violation.

We reverse their burglary convictions, and we remand the matter for a new trial on those charges. We find Gregory's other three assignments of error and the other issues raised under Gary's first and second assignments of error, except for his sufficiency claim, to be moot. We therefore decline to address them. See App.R. 12(A)(1)(c).

{¶ 24} Gary's claim that the evidence was insufficient to support his conviction is not rendered moot, because a finding of insufficient evidence would mean a complete failure of proof by the prosecution so that a retrial would be barred by the Double Jeopardy Clause. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541; *State v. Ashbrook* (Apr. 30, 1997), 1st Dist. No. C–960535. However, our review of the record shows that the state's evidence, when viewed in a light most favorable to the prosecution, could have convinced a rational trier of fact that Gary, by force, stealth, or deception, trespassed in an occupied structure or in a separately secured or occupied portion of an occupied structure, with purpose to commit a criminal offense. Consequently, the evidence was sufficient as a matter of law to support his conviction for burglary pursuant to R.C. 2911.12(A)(3), and a retrial is not barred. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; *Ashbrook,* supra.

{¶ 25} The judgment of the trial court is reversed, and this cause is remanded to that court for further proceedings in accordance with law.

Judgment reversed
and cause remanded.

GORMAN and SUNDERMANN, JJ., concur.