[Cite as *State v. Mapp*, 2011-Ohio-4468.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,          CASE NO. 14-10-34

    v.

WILLIE MAPP,               O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Trial Court No. 09-CR-0035

**Judgment Affirmed**

Date of Decision:    September 6, 2011

APPEARANCES:

    *Alison Boggs* for Appellant

    *Rick Rodger* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Willie Mapp (hereinafter "Mapp"), appeals the judgment of conviction and sentence entered against him by the Union County

Court of Common Pleas, following a jury trial where he was found guilty of eight (8) counts of sexual battery and was sentenced to a total of twenty-four (24) years in prison. For the reasons that follow, we affirm.

{¶2} This case stems from allegations that, while he was employed at the Ohio Reformatory for Women (hereinafter "ORW") as a corrections officer, Mapp forced certain inmates to provide him oral sex on a number of occasions. Each incident allegedly occurred in the staff bathroom in the building known as Harmon East from about 2003 to 2004.

{¶3} On March 27, 2008, the Union County Grand Jury indicted Mapp on thirteen (13) counts of sexual battery in violation of R.C. 2907.03(A)(11), all felonies of the third degree. This was filed under Case No. 08-CR-0039 (also referred to later as the 2008 case).

{¶4} On June 23, 2008, Mapp filed a motion to dismiss the indictment on constitutional speedy trial issues. On July 14, 2008, the trial court overruled his motion.

{¶5} On September 4, 2008, the State dismissed all counts against Mapp.

{¶6} On February 23, 2009, the Union County Grand Jury re-indicted Mapp on thirteen (13) counts of sexual battery in violation of R.C. 2907.03(A)(11), all felonies of the third degree. This was filed under Case No. 09-CR-0035 (also referred to later as the 2009 case).

{¶7} Mapp's counsel filed various motions in the case, and all were scheduled for a hearing on February 24, 2010. However, the hearing was ultimately held on April 29, 2010.

{¶8} On August 30-31, 2010, the matter proceeded to trial. During the trial, two witnesses testified about a video tape that existed, which allegedly showed Mapp entering the staff bathroom with an inmate on July 6, 2004. (Aug. 31, 2010 Tr. at 44-46, 50). Because the particular inmate shown going into the staff bathroom with Mapp was not going to testify at trial, the State had dismissed the charges pertaining to her prior to trial. (Id.). Nevertheless, the State still wanted to offer the video as evidence at trial and argued that the video was relevant as "other acts" evidence as it tended to show a pattern of conduct and that Mapp had opportunity to enter into a staff bathroom with an inmate. (Id.). The trial court ruled that the State could show the video as long as it established the proper foundation. (Id.).

{¶9} To establish the foundation for the video, the State called Trooper Tamara Getz. She testified that she had learned that there was a video from Rufus Smith, the former investigator at ORW, and that she had viewed it in the course of her investigation. (Aug. 31, 2010 Tr. at 32-34).

{¶10} Next, Rufus Smith testified that he had been employed with ORW from 2003 to 2004 as the facility's investigator. (Aug. 31, 2010 Tr. at 52). Smith explained that while he was at ORW he became aware of allegations of sexual

incidents involving corrections officer, Mapp, and certain female inmates. (Id. at 53-55). As a result of this information, with the permission of the Warden, Smith said he had a video camera installed in Harmon East that focused on the staff bathroom. (Id. at 55-56). Smith testified that he believed the camera was set up in June of 2004, and that it was installed for about a month and a half. (Id. at 58). Smith explained that he reviewed the video recordings once a week and that out of the entire recordings, the only incident he saw from the recordings was the incident on July 6, 2004. (Id. at 60-61).

{¶11} The State then moved to show the video recording of the July 6th incident to the jury, but Mapp's defense counsel objected. (Id. at 63). Mapp's defense counsel stated that all he had received from the State was a recording of the July 6th incident during discovery, and that he had been unaware, until now during Mr. Smith's testimony, that other video recordings possibly existed since the video camera had been installed for a month and a half. (63-65). Mapp's defense counsel said that if this was the case, then it appeared that the video camera might have been in place prior to July 6th and that it may have been recording during other dates charged in the indictment. (Id.). Consequently, the trial court allowed the parties to voir dire the witness outside the presence of the jury to see if they could determine the dates the video camera had been recording and whether any other recordings currently existed. (Id. at 65).

{¶12} During the voir dire, Smith said that he believed the camera had been set up in June 2004 and had been in place for a month and a half. (Id. at 67-68). However, later Smith testified that he was positive that the camera had been set up *after* he had received information of the allegations regarding the victims involved in the May and June incidents. (Id. at 78). In addition, Smith also admitted that he was not sure how the camera operated and was not sure whether it would record over previously taped recordings. (Id. at 67). Smith said that all he knew was that the camera recordings were somehow fed into his computer and that he was able to watch the recordings on his computer directly. (Id.) Overall, Smith testified that he reviewed all of recordings on his computer from the video camera, and he was positive that the only time he saw Mapp and an inmate on the recording was on July 6, 2004. (Id.) While he admitted that there had been other recordings that had not shown any incidents involving other inmates and Mapp, Smith said that he did not have any of those recordings in his possession. (Id. at 68).

{¶13} Given Smith's voir dire, Mapp's defense counsel moved for a mistrial dependent on whether the State would be able to produce all of the video recordings taken from Smith's investigation. (Id. at 84).

{¶14} With respect to the admissibility of the video recording and Mr. Smith's testimony, the trial court found that Smith's testimony was inconsistent and that it was clear he was mistaken in one of two ways. (Id. at 86). In

particular, it found that either Smith started his investigation in June prior to receiving the information regarding the incidents in June, and if so, then he was wrong about having spoken to the victims first; or, Smith started his investigation after he spoke to the victims, and if so, then the camera could not have been set up for an entire month and a half. (Id. at 86-87). The trial court also found that given Smith's lack of knowledge about how the video camera operated, the foundation for the proposed video was insufficient to allow the showing of the video to the jury. (Id. at 87). As a result, the trial court excluded the video from trial, struck all testimony regarding the video from trial, and gave the jury a limiting instruction to disregard Smith's testimony and any other testimony regarding a video recording. (Id. at 88-89, 93-95). The trial court also stated that, given the fact that no one was sure whether these potential video recordings still existed, it would take defense counsel's motion for mistrial under advisement and hold a post-trial hearing on the motion in order to allow the parties to make further inquiry as to the existence of the video recordings. (Id. at 90-91).

{¶15} After the trial court struck the testimony regarding the video and gave its limiting instruction to the jury, the State rested. Mapp's counsel filed a Crim.R. 29 motion for acquittal, but Mapp's motion was overruled, and the matter was submitted to the jury. Ultimately, the jury returned guilty verdicts on all counts that were submitted to the jury for consideration.

{¶16} After the trial, Mapp's counsel filed a motion for mistrial, a motion for a new trial, and a renewed motion for acquittal based on an alleged *Brady* violation.

{¶17} On November 1, 2010, a hearing was conducted on Mapp's motions. At the hearing, Mapp's defense counsel presented the following pieces of evidence: the July 6, 2004 video recording, a transcript of Smith's voir dire, and an email correspondence from ORW indicating that "[t]hey have no information regarding [Mapp's defense counsel's] request" for the alleged additional video recordings. (Defense Exs. A, B, & C). In addition, the trial court heard arguments from both parties regarding the potential *Brady* violation.

{¶18} On November 2, 2010, the trial court overruled all of Mapp's motions, finding that there was no legal or factual basis sufficient to warrant granting the motions.

{¶19} On November 14, 2010, a sentencing hearing was held wherein the trial court sentenced Mapp to three (3) years imprisonment on each count and ordered that each of the sentences run consecutively to one another, for an aggregate term of twenty-four (24) years imprisonment. The trial court further identified Mapp as a tier three sex offender and ordered him to register in person with the local sheriff every ninety days upon his release from prison.

{¶20} Mapp now appeals and raises four assignments of error. For ease of our discussion, we elect to address his first and second assignments of error together.

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION FOR MISTRIAL, MOTION FOR A NEW TRIAL, AND A RENEWED MOTION FOR ACQUITTAL BASED ON THE APPELLEE'S FAILURE TO SECURE AND PRESERVE KEY EVIDENCE.**

**ASSIGNMENT OF ERROR NO. II**

**APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE APPELLEE WITHHELD POSSIBLE BRADY EVIDENCE.**

{¶21} In his first and second assignments of error, Mapp argues that the trial court erred when it overruled his motion for a mistrial, motion for a new trial, and renewed motion for acquittal when a *Brady* violation occurred. In particular, Mapp claims that his due process rights were violated when the State failed to preserve a video tape that he claims would have either bolstered a witness' testimony or would have absolutely contradicted it.

{¶22} Generally, a trial court's decision to deny a motion for a new trial will not be disturbed on appeal absent an abuse of discretion. *State v. Ray*, 3d Dist. No. 14-05-39, 2006-Ohio-5640, ¶53, citing *State v. Farley*, 10th Dist. No. 03AP-555, 2004-Ohio-1781, ¶¶6-7. However, in cases where the appellant has alleged that the prosecution suppressed evidence, the appellate court does not

review under the abuse-of-discretion standard but is required to conduct a due process analysis to determine "whether a defendant's substantial rights have been materially affected." *State v. Johnston* (1988), 39 Ohio St.3d 48, 59, 529 N.E.2d 898. As such, we review de novo a trial court's resolution of a new trial motion based upon an alleged *Brady* violation, inquiring whether the defendant's due process rights were preserved. *State v. Gibson,* 12th Dist. No. CA2007-08-187, 2008-Ohio-5932, ¶24; *State v. Carroll,* 6th Dist. No. L-05-1362, 2007-Ohio-5313, ¶57; *State v. Moore*, 3d Dist. No. 14-08-43, 2009-Ohio-2106, ¶19; *State v. Keith*, 3d Dist. No. 3-10-19, 2011-Ohio-407, ¶41.

**{¶23}** Furthermore, we review a trial court's decision on a Crim.R. 29(C) motion for acquittal using the same standard as is used to review a sufficiency of the evidence claim. *State v. Lightner,* 3d Dist. No. 6-08-11, 2009-Ohio-544, ¶11, citing *State v. Carter* (1995), 72 Ohio St.3d 545, 553, 651 N.E.2d 965. When reviewing a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶47, citing *State v. Jenks* (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, superseded by state constitutional amendment on other grounds as stated in *State v. Smith* (1997), 80 Ohio St.3d 89, 684 N.E.2d 668.

**{¶24}** It is well-settled that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, *irrespective of the good faith or bad faith of the prosecution.*" *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶338, citing *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (emphasis added). Favorable evidence under *Brady* includes both exculpatory and impeachment evidence, but the evidence must be both favorable and material before disclosure is required. Id., citing *U.S. v. Bagley* (1985), 473 U.S. 667, 674, 105 S.Ct. 3375, 87 L.Ed.2d 481. Evidence is material under *Brady* only if there exists a "reasonable probability" that the result of the trial would have been different had the evidence been disclosed to the defense. Id., citing *Kyles v. Whitley* (1995), 514 U.S. 419, 433-34, 115 S.Ct. 1555, 131 L.Ed.2d 490, quoting *Bagley*, 473 U.S. at 682. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id., citing *State v. Johnston* (1998), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph five of the syllabus.

**{¶25}** Nevertheless, when potentially exculpatory evidence requested by a defendant is permanently lost, "courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." *California v. Trombetta* (1984), 467 U.S. 479, 486, 104 S.Ct. 2528, 81 L.Ed.2d 413. As such, "[t]he Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can

be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶9, quoting *Arizona v. Youngblood* (1988), 488 U.S. 51, 57, 109 S.Ct. 333, 102 L.Ed.2d 281. With regard to such evidentiary material, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id., quoting *Youngblood*, 488 U.S. at 58. See, also, *State v. Hall*, 3d Dist. No. 1-08-66, 2009-Ohio-3824, ¶34. Therefore, if evidence is not materially exculpatory, but only "potentially useful," the State's failure to preserve it does not violate due process unless the defendant can show the State acted in bad faith.

{¶26} Here, Mapp claims that the State failed to preserve a video tape that would have either bolstered a witness' testimony or would have absolutely contradicted it, and that was materially exculpatory as to at least two of the counts charged against him (the two counts that concerned sexual battery incidents in June of 2004).

{¶27} However, we find that after reviewing the record Mapp has failed to demonstrate that the evidence was materially exculpatory and there was "a reasonable probability that the result of the proceedings would have been different." First of all, it is Mapp's burden to prove the exculpatory nature of the video recordings. *State v. Rhines*, 2nd Dist. No. 23486, 2010-Ohio-3117, ¶45, citing *State v. Jackson* (1991), 57 Ohio St.3d 29, 33, 565 N.E.2d 549 (stating that a

defendant "must prove a *Brady* [*v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215,] violation and denial of due process"). In support of his position, Mapp solely relies on Smith's testimony. Nevertheless, after considering Smith's testimony, both during trial and during the voir dire, the trial court found that it was so inconsistent and confusing that it was unreliable. As a result, the trial court had Smith's entire testimony stricken from the record, all testimony related to the existence of a video was additionally stricken, and the trial court also instructed the jury to disregard any and all such evidence.

{¶28} Therefore, because Mapp has failed to show how the video recordings were materially exculpatory, he is required to show bad faith on the part of the State in failing to preserve the video recordings. Mapp claims that here the prosecutor determined which portions of the video tape needed to be preserved and provided to Mapp's defense counsel. Thus, Mapp argues that, because the video recordings were not preserved, the State acted in bad faith. However, again, despite Mapp's arguments to the contrary, we find that the record does not demonstrate that Mapp satisfied his burden of proving that the State acted in bad faith through the loss of the video recordings.

{¶29} In addition, Mapp also argues that the trial court erred in interpreting Smith's testimony in favor of the State when it overruled his motions. We disagree. First of all, the trial court did not overrule his motions based on its "interpretation" of Smith's testimony; rather, it overruled his motions because

Mapp failed to demonstrate sufficient factual or legal grounds to warrant granting a new trial. (Nov. 2, 2010 JE). This ruling had nothing to do with Smith's testimony, but instead was based on Mapp's failure to satisfy his burden of demonstrating that a *Brady* violation had occurred.

{¶30} Moreover, the trial court also did not "interpret" Smith's testimony in either side's favor when rendering its decision to strike Smith's testimony during the trial. While the trial court did speculate as to which of Smith's versions of events it believed was more accurate, ultimately the trial court found that Smith's testimony was so inconsistent and confusing that it was unreliable. Again, as a result, the trial court had Smith's entire testimony stricken from the record, all testimony related to the existence of a video was additionally stricken, and the trial court also instructed the jury to disregard any and all such evidence. Consequently, not only was the State not allowed to present its video recording to the jury, but it was no longer able to use any of Smith's testimony concerning his investigation of Mapp.

{¶31} We note that, despite the State's inability to use the ORW's investigator's testimony, the State still had three victims testify at trial. Each of the victims testified in great detail about how they were made to perform oral sex on Mapp in the staff bathroom at ORW. One of the victims testified that she had even kept a datebook and explained to the jury the specific written notations she had made each time she was forced to give Mapp oral sex. This datebook was

given to Trooper Getz in 2004 when the victim was first interviewed and was subsequently entered into evidence at trial.

{¶32} Finally, in relation to Mapp's Crim.R. 29(C) motion for acquittal, we note that the basis of his motion was that a *Brady* violation occurred. However, the proper remedy for a *Brady* violation is a new trial, not an acquittal. *Johnston*, 39 Ohio St.3d at 63; *State v. Kalejs*, 150 Ohio App.3d 465, 470-71, 782 N.E.2d 112, 2002-Ohio-6657. *State v. Moore*, 2009-Ohio-2106, at ¶25.

{¶33} Overall, because we find that no *Brady* violation occurred, we find that the trial court did not err in denying Mapp's motions for a new trial, acquittal, and/or mistrial.

{¶34} Mapp's first and second assignments of error are, therefore, overruled.

### ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO DISMISS THE MATTER ON SPEEDY TRIAL GROUNDS.**

{¶35} In his third assignment of error, Mapp argues that the trial court erred in overruling his motion to dismiss the case when there had been a violation of his constitutional right to a speedy trial. In particular, Mapp claims that there was an unreasonable pre-indictment delay of six years, and that this delay also caused him actual prejudice since "in the course of the unexcused delay in bringing the indictment, critical pieces of evidence were either lost or destroyed." (Appellant's

-14-

Brief at 16). However, before addressing Mapp's arguments, we must first discuss the relevant procedural history.

**{¶36}** In the 2008 case, Mapp filed a motion to dismiss based on speedy trial grounds. With respect to Mapp's motion to dismiss on the basis of pre-indictment delay, in its July 14, 2008 journal entry, the trial court overruled Mapp's motion to dismiss finding that the delay had not been unreasonable or unjustifiable since the "delay occurred due to an ongoing investigation." (Aug. 27, 2010 JE, attached July 14, 2008 JE).

**{¶37}** The State eventually dismissed the 2008 case on September 4, 2008. On February 23, 2009, Mapp was re-indicted on the same charges (the 2009 case).

**{¶38}** While Mapp never specifically re-filed his motion to dismiss on the basis of pre-indictment delay again in the 2009 case, the record demonstrates that in the 2009 case, the parties discussed the potential effect of all prior motions and rulings made in the 2008 case. On April 29, 2010, a hearing was conducted for purposes of dealing with the current defense motions and the motions and rulings made in the 2008 case. (Apr. 29, 2010 Tr. at 3-26). Neither party objected to incorporating and making binding those prior rulings from the 2008 case into the 2009 case. (Id). Moreover, while Mapp filed a waiver for statutory speedy trial purposes, it was agreed by all parties that Mapp was not waiving his pre-indictment delay argument made in Case No. 08-CR-0039. (T. Vol. 4 at 24-25). At the conclusion of the hearing, the trial court ruled that all prior motions and

rulings made in the 2008 case would be incorporated into the 2009 case. (Id.); (Aug. 27, 2010 JE, attached July 14, 2008 JE).

**{¶39}** On August 30-31, 2010, the matter proceeded to trial. At trial, as stated above, two witnesses testified that a video existed showing Mapp entering the staff bathroom with an inmate on July 6, 2004. However, during the trial, it was also discovered that there were possibly other video recordings from the ORW investigation and that these other alleged video recordings no longer existed. At that point during the trial, Mapp's defense counsel made a motion for a mistrial based on a possible *Brady* violation. The trial court excluded the video tape of the July 6, 2004 incident, struck the investigator's entire testimony, along with any and all testimony regarding the existence of a video camera, and gave the jury a limiting instruction. The trial court further took Mapp's defense counsel's motion for mistrial under advisement, and after the conclusion of the trial, set the matter for a hearing to determine whether a possible *Brady* violation had occurred.

**{¶40}** After the trial, Mapp's counsel filed a motion for mistrial, a motion for a new trial, and renewed motion for acquittal based on the alleged *Brady* violation. Notably, Mapp's defense counsel did not renew his motion to dismiss based on pre-indictment delay in light of the State's failure to preserve the additional video recordings from ORW's investigation.

{¶41} On November 1, 2010, a hearing was conducted on Mapp's motions, and on November 2, 2010, the trial court overruled all of Mapp's motions finding that there was no legal or factual basis sufficient to warrant granting the motions.

{¶42} "To warrant a dismissal on the basis of preindictment delay, a defendant must present evidence establishing substantial prejudice. Once the defendant fulfills that burden, the State has the burden of producing evidence of a justifiable reason for the delay." *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶51, citing *State v. Whiting* (1998), 84 Ohio St.3d 215, 217, 702 N.E.2d 1199. "Proof of actual prejudice to the defendant must be specific and non-speculative; the defendant bears the burden of demonstrating the exculpatory value of the evidence of which he was deprived due to the delay." *State v. Tullis*, 10th Dist. No. 04AP-333, 2005-Ohio-2205, ¶14, citing *State v. Peoples*, 10th Dist. No. 02AP-945, 2003-Ohio-4680. See, also, *State v. Barnhardt*, 9th Dist. No. 05CA008706, 2006-Ohio-4531, ¶16.

{¶43} On appeal, Mapp claims that there was an unreasonable pre-indictment delay of six years and that, as a result, he has suffered actual prejudice since the additional video recordings no longer exist. However, after review of the record, we find that Mapp has failed to preserve his argument regarding the absence of video recordings with respect to his motion to dismiss based on pre-indictment delay.

{¶44} As we noted above, the existence of possible additional video recordings from the ORW's investigation of Mapp was not discovered until *during the trial* in the 2009 case. Thus, it was not known to the trial court when it made its ruling back in the 2008 case. With respect to the 2008 decision, we note that on appeal, Mapp does not specifically argue that the reasons the trial court denied his original motion back in the 2008 case were erroneous. Therefore, without more, we find that the trial court did not err with respect to its July 14, 2008 judgment entry overruling Mapp's motion to dismiss based on pre-indictment delay when it found that there was no unreasonable delay because the delay had been caused by an ongoing investigation.

{¶45} In addition, although Mapp's motion to dismiss based on pre-indictment delay was re-raised in the 2009 when the trial court's July 14, 2008 decision was incorporated into the 2009 case, once again, the argument about the failure to preserve additional video recordings was not known at that time. Thus, again, the argument was not presented to the trial court when it incorporated its prior ruling into the 2009 case.

{¶46} Finally, even when it was discovered that the State had possibly failed to preserve the video recordings, Mapp failed to raise the issue of the absence of video recordings with respect to his motion to dismiss based on pre-indictment delay. Rather, he raised a motion for mistrial, a motion for acquittal, and a motion for new trial based on a possible *Brady* violation, which are separate

and distinct issues. The trial court never addressed Mapp's motion to dismiss based on pre-indictment delay on the basis that he had suffered actual prejudice since the additional video recordings no longer existed.

{¶47} Nevertheless, even if we were to find that Mapp has preserved this argument for purposes of appeal, because Mapp failed to demonstrate the exculpatory nature of the evidence for purposes of *Brady*, we find that he had similarly failed to show the exculpatory nature of the evidence for which he was deprived due to the delay. Therefore, for all of the above reasons, we find that the trial court did not err in denying his motion to dismiss based on pre-indictment delay.

{¶48} Mapp's third assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. IV

**THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT TO CONSECUTIVE SENTENCES.**

{¶49} In his last assignment of error, Mapp claims that the trial court erred in sentencing him to consecutive sentences. Specifically, Mapp argues that his aggregate sentence of twenty-four (24) years exceeded the maximum penalty for a third degree felony, and that the trial court put too much emphasis on his lack of remorse and did not consider other relevant sentencing factors.

{¶50} A trial court's sentence will not be disturbed on appeal absent a defendant's showing by clear and convincing evidence that the sentence is

unsupported by the record; the sentencing statutes' procedure was not followed or there was not a sufficient basis for the imposition of a prison term; or that the sentence is contrary to law.[1] *State v. Ramos*, 3d Dist. No. 4-06-24, 2007-Ohio-767, ¶23 (the clear and convincing evidence standard of review set forth under R.C. 2953.08(G)(2) remains viable with respect to those cases appealed under the applicable provisions of R.C. 2953.08(A), (B), and (C)); *State v. Rhodes*, 12th Dist. No. CA2005-10-426, 2006-Ohio-2401, ¶4; *State v. Tyson*, 3d Dist. Nos. 1-04-38, 1-04-39, 2005-Ohio-1082, ¶19, citing R.C. 2953.08(G). Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus; *State v. Boshko* (2000), 139 Ohio App.3d 827, 835, 745 N.E.2d 1111. An appellate court should not, however, substitute its judgment for that of the trial court because the trial court is "'clearly in the better position to judge the defendant's likelihood of recidivism and to ascertain the effect of the crimes on the victims.'" *State v. Watkins*, 3d Dist. No. 2-04-08, 2004-Ohio-4809, ¶16, quoting *State v. Jones* (2001), 93 Ohio St.3d 391, 400, 754 N.E.2d 1252.

---

[1] We note that the Supreme Court of Ohio recently released a plurality opinion in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, which established a two-part test utilizing both the clear and convincing and abuse of discretion standard of review in reviewing felony sentencing decisions under R.C. 2953.08(G). While we cite to this Court's precedential clear and convincing standard of review, which was affirmed and adopted by three dissenting Justices in *Kalish*, we note that the outcome of our decision in this case would be identical under the *Kalish* plurality's two-part test as well.

{¶51} As this Court has repeatedly stated, after the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, trial courts have full discretion in imposing sentences within the statutory range, and thus, are no longer required to make judicial findings or give reasons for a sentence that is more than the minimum. *Foster*, 2006-Ohio-856, paragraph seven of the syllabus. However, trial courts must still consider the overriding purposes of felony sentencing, specifically listed in R.C. 2929.11(A), and the seriousness of the offender's conduct and the recidivism of the offender pursuant to R.C. 2929.12(A). Id. at ¶¶36-42.

{¶52} Here, the trial court sentenced Mapp to three (3) years imprisonment on each of the eight counts of sexual battery, which were all felonies of the third degree. Pursuant to R.C. 2929.14(A)(3), the maximum sentence for a third degree felony is five years. Thus, the imposition of three years for each count was well within the statutory ranges, and as such, the sentences imposed were not contrary to law.

{¶53} Moreover, in imposing the sentence, the trial court considered the record, the presentence investigation report, the submitted victim impact statement, Mapp's sentencing memorandum, oral statements, the need for deterrence, incapacitation, rehabilitation and restitution, the principles and purposes under R.C. 2929.11, and balanced the seriousness and recidivism factors under R.C. 2929.12. (Nov. 16, 2010 JE at 2); (Nov. 15, 2010 Tr. at 13).

Therefore, the trial court's sentence was rendered in conformance with the sentencing statutes.

{¶54} Furthermore, we find that Mapp has failed to demonstrate by clear and convincing evidence that the trial court's consecutive sentences were not supported by the record or that there was not a sufficient basis for the imposition of consecutive sentences. *Ramos*, 2007-Ohio-767, at ¶23. Mapp claims that the trial court put too much emphasis on his apparent lack of remorse and did not take into account that he did not have a prior record, had been gainfully employed, and, now that he was out of the institution, he was "no longer [] in a situation where this type of behavior could repeat itself." (Appellant's Brief at 18-19). However, while the trial court did consider Mapp's apparent lack of remorse at the sentencing hearing, the trial court also stated as follows:

> **I think this case is pretty simple, Mr. Mapp. You were entrusted by the citizens of the State of Ohio to hold a position of trust wherein you were to supervise inmates at the Reformatory for the purpose of rehabilitation. One of the things that you were entrusted to do was to teach respect for authority and respect for the institution. Instead you chose to violate your trust, the trust put into you by the citizens of the State of Ohio. You used your position to compel three victims to submit to sexual conduct, sexual conduct in a way that is demeaning to women when forced to perform such acts. You didn't do this once. You did it eight times from what the jury found and you were alleged to have done it at least five others. Who knows if there were others in term of your employment from 2007 – excuse me – 1997 to 2004. You've shown, in my opinion, no remorse, I agree with the State's position in that regard, when offered the opportunity to do so. And while you certainly have the right, constitutional right to a jury trial, and you exercised that right, these victims**

**relived the horror once again in the courtroom in front of you. And you were found guilty as a result. As a result, the court finds that the shortest prison term would demean the seriousness of the offense, and would not protect the public. The court finds that consecutive sentences are necessary to protect the public and not disproportionate to the offenses committed.**

(Nov. 15, 2010 Tr. at 13-14).

{¶55} Given the record herein and the trial court's statements at the sentencing hearing, we cannot conclude that the trial court erred when it imposed consecutive sentences. The record clearly demonstrates that while he had been employed *as a corrections officer* at ORW, Mapp used his position to force several female inmates give him oral sex in the staff bathroom. Mapp was put into a position of power and trust. However, instead of furthering the rehabilitative goals of the institution, Mapp clearly used his position to take advantage of the female inmates who were entrusted in his care while they were at the institution. As such, we cannot conclude that the trial court erred in sentencing Mapp to consecutive sentences.

{¶56} Mapp's fourth assignment of error is, therefore, overruled.

{¶57} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, J., concurs.**
**WILLAMOWSKI, J., concurs in Judgment Only as to Assignment No. 4.**
**/jnc**