**[Cite as *State v. Woelke*, 2017-Ohio-4034.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,              CASE NO.  13-16-27

      v.

MARK D. WOELKE,                  O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,              CASE NO.  13-16-28

      v.

MARK D. WOELKE,                  O P I N I O N

      DEFENDANT-APPELLANT.

**Appeals from Seneca County Common Pleas Court**
**Trial Court Nos. 15CR0256 and 16CR0032**

**Judgments Affirmed**

**Date of Decision:   May 30, 2017**

APPEARANCES:

      *Dorothy L. Williams* **for Appellant**

      *Angela M. Boes* **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant, Mark D. Woelke ("Woelke"), appeals the October 28, 2016 judgment of the Seneca County Court of Common Pleas, in case number 15CR0256, journalizing his conviction by a jury for one count of Burglary, in violation of R.C. 2911.12(A)(3),(D), a felony of the third degree, and sentencing him to a prison term of thirty-six months. Woelke also appeals the October 28, 2016 judgment of the Seneca County Court of Common Pleas, in case number 16CR0032, journalizing his conviction by a jury for six counts of Burglary, in violation of R.C. 2911.12(A)(2),(D), all felonies of the second degree, and three counts of Grand Theft of a Motor Vehicle, in violation of R.C. 2913.02(A)(1),(B)(5), all felonies of the fourth degree, and sentencing him to an aggregate prison term of eighteen years and thirty-six months to run consecutive to his prison term imposed in case number 15CR0256.

{¶2} On appeal, Woelke assigns as error the trial court's decision overruling his motions to compel and motions for acquittal. Specifically, Woelke challenges the trial court's finding that the investigating detective's notes, which were not disclosed in discovery by the prosecution, were not exculpatory evidence.

*Facts and Procedural History*

{¶3} On October 19, 2015, at 11:50 a.m., Officer Gabriel Wedge of the Fostoria Police Department was traveling to his office from his residence in Seneca

County when he observed a female driving a vehicle suspected to be involved in a number of daytime burglaries and thefts in the area. Officer Wedge followed the vehicle to his neighbor's home and witnessed Woelke exit the home and throw something into the trunk of the vehicle, which was later determined to be a flat screen television. Knowing that Woelke was not a resident of the home, Officer Wedge pulled into the driveway to attempt to block the vehicle from leaving, but Woelke, who was now in the driver's seat, was able to drive through the adjacent field and around Officer Wedge's vehicle. Detective Wedge pursued the vehicle in a high-speed chase, but eventually lost track of it in Wood County and decided to stop the pursuit due to the fact that the rate of speed at times was dangerously high and that he was driving an unmarked vehicle which did not have lights or sirens.

{¶4} Officer Wedge was later able to determine the identity of the female he observed driving the car as Jennifer Godsey. Woelke was indicted for a third degree felony burglary offense, in case number 15CR0256, to which he entered a plea of not guilty. Godsey was also indicted for complicity to burglary. Godsey eventually entered into a plea agreement with the prosecution and agreed to provide information regarding the burglaries and thefts. Godsey revealed that she helped Woelke break into numerous homes and buildings to steal personal property from April 2015 to October 2015. She explained that Woelke chose a property to enter looking for ATVs, guns, televisions, money or jewelry. She then drove around the

area while Woelke was in the home or out structure and, after sufficient time had passed, she circled back to pick him up with the stolen items. The two then drove to Toledo to exchange the objects for heroin, or sometimes money, that they received from a drug dealer named "Freddie." The pair then returned to Woelke's mother's home where they used the drugs. They stayed at the home for days or weeks at time, depending on how much heroin they received. Once they consumed all the drugs in their possession they set out to find another residence to burglarize.

{¶5} On January 6, 2016, Godsey agreed to ride in a vehicle with Detective Reinbolt of the Seneca County Sheriff's Office and the investigator from the Seneca County Prosecutor's Office. The three drove around the county as Godsey identified the locations where Woelke committed the burglary and theft offenses. She also recalled the items that were taken from each location and the mode of Woelke's entry. Detective Reinbolt wrote down the addresses and information as Godsey relayed it. Detective Reinbolt returned to his office and cross checked the addresses and details of the offenses in his database, which confirmed the information given by Godsey.

{¶6} On February 18, 2016, in case number 16CR0032, an eleven count indictment was returned against Woelke alleging that Woelke committed eight counts of second degree felony Burglary and three counts of Grand Theft of a Motor

Vehicle, each a fourth degree felony. Woelke entered pleas of not guilty to the charges and the case proceeded to discovery.

{¶7} On September 15, 2016, the trial court granted the prosecution's motion to consolidate case number 15CR0256 and case number 16CR0032 for purposes of trial.

{¶8} On October 13, 2016, Woelke filed a Motion to Compel Additional Discovery in each case claiming that the prosecution had failed to provide certain requested discovery, including any written or recorded statements made by Godsey during the course of the investigation, as well as any investigative reports or notes made by law enforcement. The prosecution filed a response claiming it had fully complied with the discovery request.

{¶9} On October 17, 2016, the trial court granted the prosecution's motion to dismiss with prejudice Counts Ten and Eleven of the indictment in case number 16CR0032.

{¶10} On October 25, 2016, the case proceeded to a two-day jury trial on the remaining charges. Prior to opening statements, and outside the presence of the jury, the trial court addressed the pending motions to compel with the parties on the record. Defense counsel raised an issue with respect to a reference made by Detective Reinbolt in a recorded interview with Godsey to handwritten notes Detective Reinbolt had taken during the "ride-along" with Godsey. The defense

claimed that they had not received any handwritten investigation notes from the prosecution in discovery despite the specific request being made. (Tr. Trans. at 142, 144). The prosecution explained that any material or notes used in the investigation in relation to Godsey's interview was incorporated into Detective Reinbolt's investigation report. The prosecutor further contended that any and all notes were work product and were destroyed after they were compiled into the formal report, which was provided to the defense in discovery. (*Id*. at 143).

{¶11} The prosecutor informed the trial court that she had not seen the notes and conferred with Detective Reinbolt who relayed to her that the notes in question "consisted only of five different addresses on a piece of paper when [Detective Reinbolt and Godsey] went to the location in the County where many of [the] reported burglaries had occurred. There weren't many notes taken on them at all. What the notes consisted of were basically the location, what—was entry made, how was entry made, was Ms. Godsey with the Defendant at the time and what items were stolen from the locations. " (Tr. Trans. at 162).

{¶12} The prosecutor confirmed that the handwritten notes had been destroyed, but the contents were rewritten in Detective Reinbolt's formal investigation report and that there was no intention to conceal the contents from the defense. Moreover, the prosecutor stated that the State planned on calling both Godsey and Detective Reinbolt to the stand during its case-in-chief. Woelke's

defense counsel renewed the objection asserting that the prosecution had failed to comply with its discovery request and moved for acquittal. The trial court overruled the motions for acquittal and motions to compel additional discovery concluding that the defense's discovery request had fully been complied with by the State and therefore there was no ground for acquittal on that basis.

{¶13} The case continued to trial where the State presented the testimony of thirteen witnesses, including Godsey and Detective Reinbolt, and the defense presented the testimony of two witnesses in its case. In addition, the recorded interview with Godsey, which provided the basis for the defense's discovery objection, was also played for the jury at trial on Godsey's cross-examination by the defense. The jury returned a verdict convicting Woelke of one count of third degree felony Burglary in case number 15CR0256, and six counts of second degree felony Burglary and three counts of fourth degree felony Grand Theft of Motor Vehicle in case number 16CR0032.

{¶14} Woelke filed this appeal, asserting the following assignment of error.

**THE TRIAL COURT ERRED IN RULING THAT THE DETECTIVE'S NOTES WERE NOT EXCULPATORY EVIDENCE.**

{¶15} In his sole assignment of error, Woelke contends that Detective Reinbolt's handwritten notes taken during the January 2016 "ride along" with Godsey, which the record indicates were subsequently incorporated into Detective

Reinbolt's final report and destroyed, were exculpatory evidence that the prosecution should have disclosed in discovery and that the State's failure to do so violated his due process rights.

*Discussion of the Handwritten Notes*
*in the Recorded Interview*

{¶16} As previously indicated, the recorded interview of Godsey with Detective Reinbolt was played for the jury at trial during Godsey's cross-examination by defense counsel. The interview took place approximately a week after Godsey completed the "ride along" with Detective Reinbolt and Mr. Noffs, the investigator with the county prosecutor's office. The record demonstrates that the contents of the interview are duplicative of the testimony given by Godsey and Detective Reinbolt at trial.

{¶17} In the interview, Godsey gave a general background on how she and Woelke met, described the pattern of conduct they employed to facilitate the burglaries and thefts, and their motive for committing the offenses. Detective Reinbolt explained to Godsey during the interview that he had written down the addresses of the locations she had identified on the ride along and took pictures of the properties.

> **Det. Reinbolt: Okay. Okay. So what I'm going to do now is I'm just going to show you pictures. What I did is after we went out last Wednesday, I wrote down the addresses and I went out and took pictures of the residences. I just need you to confirm. I'm going to show you pictures. And if you're not sure, say it. If you,**

> **you know, just let me know.  And on each one just let me know what you believe was stolen.  If you were there.  And all that good stuff, okay.**
>
> **Mr. Noffs:   Now, these houses, these are the houses that she pointed out to us.**
>
> **Det. Reinbolt:  Correct, correct.**
>
> **Mr. Noffs:  We did not, you told us all along as we were driving down the road, you would tell us if this is the one house.**
>
> **Godsey:  Correct.**
>
> **Det. Reinbolt:  None, there's none that's added here to try and trick you or left out.  These are all the addresses, all the residences that you took us to last week, okay.**
>
> **Godsey:  uh-huh.**

(Tr. Trans at 326-27).  At trial, Woelke's defense counsel highlighted the following exchange on the recorded interview to insinuate that Detective Reinbolt's handwritten notes were material exculpatory evidence.

> **Det. Reinbolt: Okay. Okay. This one, I forgot the picture, but this is one that you, it was 11267 West Township Road 35.  And it was a burglary.  And let me just see if this is on the report.**
>
> **Mr. Noffs: She pointed this house out.**
>
> **Det. Reinbolt:  She pointed this house out.  Yeah.  I just don't have a picture.  Shotgun and a flat, 55-inch flat screen TV was stolen.**
>
> **Godsey:  Yeah.**
>
> **Det. Reinbolt:  Does that ring a bell?**

**Godsey:** It does. The shotgun does because I (inaudible) anything. He had put a thing—I don't know what the house looked like.

**Det. Reinbolt:** Right. I apologize. But he forced his way into this house?

**Godsey:** Yes.

**Det. Reinbolt:** Okay.

**Mr. Noffs:** And we should note that they, that that incident and in your notes of that house that you pointed out to us under that—

**Godsey:** Is this the one where he was trying to take meat out of the, out of the freezer?

**Detective Reinbolt:** That's Sandusky County.

(Tr. Trans at 328-30). At this point, defense counsel stopped the audio recording of Godsey's interview and questioned Godsey about Detective Reinbolt's notes on the stand at trial.

**Defense Counsel:** All right. So I assume you were listening along, Ms. Godsey?

**Godsey:** Yes.

**Defense Counsel:** And the detective mentioned that he took some notes and was referencing notes to refresh your memory; is that right?

**Godsey:** No, sir.

**Defense Counsel:** You didn't hear that?

> **Godsey: They weren't refreshing my memory with any of their notes. There were two places I was getting confused, and one of them was in a separate county.**
>
> **Defense Counsel: Okay. But they indicated that they had taken notes and they were refreshing your memory. No? You're saying that didn't happen?**
>
> **Godsey: They never relayed information from their notes to me. Everything that I said was by my own free will. They never told me to say anything or reminded me of anything. They simply showed me pictures and I told them how he got in and what he took.**

(Tr. Trans at 330-31).

*Relevant Law*

**{¶18}** Whether the State's failure to preserve evidence rises to the level of a due process violation depends on whether the lost or destroyed evidence involves "material exculpatory evidence" or "potentially useful evidence." *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 73. Evidence is constitutionally material when it possesses "an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at ¶ 74, quoting *California v. Trombetta*, 467 U.S. 479, 489 (1984). If evidence is materially exculpatory, its suppression violates a defendant's due process rights, and requires dismissal of the charge. *State v. Glunt*, 10th Dist. Franklin No. 09AP-962, 2010-Ohio-3024, ¶ 9, citing *State v. Johnston*, 39 Ohio St.3d 48 (1988). If the evidence

-11-

in question is not materially exculpatory, but only potentially useful, the defendant must show bad faith on the part of the State in order to demonstrate a due process violation. *Powell* at ¶ 77, quoting *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, ¶ 10.

*Analysis*

**{¶19}** Woelke contends on appeal that Detective Reinbolt's handwritten notes were material to determine whether the notes were consistent with Detective Reinbolt's investigative report and his testimony regarding the interview with Godsey. However, the record does not support Woelke's characterization of the handwritten notes as either "material" or "exculpatory." Godsey provided similar, detailed testimony at trial to that given in the narrative by the State and disputed defense counsel's claim that Detective Reinbolt used his notes to refresh her memory during her interview. Moreover, Detective Reinbolt's testimony provided the only evidence in the record regarding the nature of these handwritten notes, which he stated consisted of five addresses of possible locations where the burglaries had occurred. He testified that he did not show or mention the addresses on the piece of paper to Godsey during the ride along.

**{¶20}** The prosecution also presented additional evidence which supported the jury's verdicts convicting Woelke of the burglary and theft offenses. For example, Officer Wedge testified to the events on October 19, 2015, that led to the

apprehension of Woelke and Godsey for the burglary offense charged in case number 15CR0256. Detective Reinbolt also testified that at several of the crime scenes law enforcement had found physical evidence, such as a single shoe print consistent with the size of a male footprint on a door indicating a forced entry, as well as images from a trail camera of a male, who Godsey identified at trial as Woelke, making a forced entry into one of the homes.

{¶21} Based upon the evidence presented at trial, Woelke has failed to demonstrate that Detective Reinbolt's handwritten notes possessed any exculpatory value that was apparent before they were destroyed and were of such a nature that Woelke would be unable to obtain comparable evidence by other reasonably available means. Furthermore, Woelke has not established that there was a reasonable probability that the result of the proceedings would have been different if these handwritten notes had been disclosed to the defense. *See State v. Johnston*, 39 Ohio St.3d 48, 61 (1988), citing *U.S. v. Bagley*, 473 U.S. 667, 682 (1985).

{¶22} Moreover, we note that at trial defense counsel objected based upon the prosecution's failure to preserve "potentially exculpatory evidence," however we find that on appeal Woelke has failed to demonstrate that the State acted in bad faith in failing to preserve Detective Reinbolt's handwritten notes. (Tr. Trans. at 438); *See State v. Mapp*, 3d Dist. Union No. 14-10-34, 2011-Ohio-4468, ¶ 25 ("[I]f evidence is not materially exculpatory, but only 'potentially useful,' the State's

failure to preserve it does not violate due process unless the defendant can show the State acted in bad faith."). "Bad faith implies something more than mere bad judgment or negligence; rather, '[i]t imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.' " *Glunt*, 2010-Ohio-3024 at ¶ 16, quoting *State v. Benson*, 152 Ohio App.3d 495, 2003-Ohio-1944, ¶ 14 (1st Dist.) (citations omitted); *Powell*, 2012-Ohio-2577 at ¶ 81. Any indication of such conduct on behalf of the State is simply not present in the record.

{¶23} Accordingly, we do not find that the trial court erred in overruling Woelke's motions to compel additional discovery and motions for acquittal on the basis of the State's failure to preserve Detective Reinbolt's handwritten notes.

{¶24} The assignment of error is overruled and the judgments are affirmed.

*Judgments Affirmed*

**PRESTON, P.J. and ZIMMERMAN, J., concur.**

**/jlr**